300 So.2d 483 (1974)
LOUISIANA & ARKANSAS RAILWAY COMPANY et al., Plaintiffs-Appellants,
v.
James M. GOSLIN, Sheriff, Defendant-Appellee,
Red River Waterway Commission, Intervenor-Appellee.
No. 54438.
Supreme Court of Louisiana.
August 30, 1974.
Rehearing Denied October 11, 1974.
*484 W. Scott Wilkinson, Wilkinson, Carmody & Peatross, Shreveport, for plaintiffs-appellants.
Robert G. Pugh, Pugh & Nelson, A. Mills McCawley, Asst. Atty. Gen., Clarence L. Yancey, Cook, Clark, Egan, Yancey & King, Shreveport, for defendants-appellees.
TATE, Justice.
The plaintiff railroad companies sue to recover property taxes paid by them under protest. We previously reversed the dismissal of the suit on an exception of no cause of action. 258 La. 530, 246 So.2d 852 (1971). On the remand, the district court rejected the plaintiffs' claims on the merits, and they again appeal.
The plaintiffs attack as invalid a two-mill ad valorem tax levied by the Red River Waterway District pursuant to constitutional and legislative authorization. See La.Const. Art. XIV, Section 30.5 (1964) and La.R.S. 34:2301 et seq. (1965). The district was created to establish and maintain a navigable waterway system extending from the Texas line to the Mississippi River, mostly through channel-improvement and realignment of the Red River. The governing commission of the district is authorized to and did levy a two-mill tax, the one here attacked, on the assessed valuation of all taxable property within the district.
The district includes the seven parishes of Caddo, Bossier, Red River, Natchitoches, Grant, Rapides, and Avoyelles, all bordering on or traversed by Red River. The district omits the three other parishes (Winn, Catahoula, and Concordia) which also border the river in this state. The plaintiff railway companies operate railroad lines or own properties in some or all of the parishes of the district.
The plaintiff railroads allege that the assessment and collection of the waterway district tax are unconstitutional, illegal, and discriminatory for two principal reasons, in essence: (1) the waterway district omits three parishes (Winn, Catahoula, and Concordia) along the Red River, but allegedly these parishes will receive the same potential benefits as the other seven bordering parishes within it; yet, the seven included parishes will pay the entire burden of the taxation; and (2) the parishes within the district assess and collect taxes on varying and unequal percentages of the actual cash value of the property in each of the said parishes, all of which percentages are less than that upon which the plaintiff railroads' assessment and tax levy are based.
(1) Does omission of three parishes constitute discriminatory treatment of seven others included in the district?
The first contention was discussed in the prior appeal. We there held that the petition stated a cause of action requiring an evidentiary merit-trial. The contention essentially raises the issue of unfair discrimination resulting in a denial of the equal protection of the laws required by the Fourteenth Amendment of the Federal Constitution.
We there summarized the principles applicable as follows (citations omitted):
"`The constitutional right to the equal protection of the laws means that every *485 one is entitled to stand before the law on equal terms with, to enjoy the same rights, as belong to, and to bear the same burdens as are imposed upon others in a like situation.' * * * This protection is equally applicable to the taxing power of the State or its subdivisions. * * * [246 So.2d 854.]
"The constitutional restriction, however, does not operate so as to prevent a variety of classifications, or remove from the discretion of the State Legislature its right to provide a number of differences in the selection or classification or persons or property (geographical, or otherwise) so long as the discrimination is not invidious, unreasonable, or oppressive, but founded on just and equitable distinctions. In cases such as this one, where it is asserted that certain classifications or exemptions therefrom, are discriminatory and violative of the principles of `equal protection', the function of the courts is to determine whether the distinction is arbitrary or is based on practical and reasonable grounds with relation to the public purpose sought to be achieved by the legislation. * * * [246 So.2d 854.]
"Of course, there exists the presumption of constitutionality, that the legislature created the classification in good faith, and that any exclusions made therefrom were for valid reasons. From this it follows that the parties attacking the statute must bear the burden of proving the facts which would render it invalid. * * *" [246 So.2d 856.]
The evidence at the trial on the merits overwhelmingly proves practical and reasonable grounds for excluding Winn, Catahoula, and Concordia Parishes from the tax burden imposed by the district. Essentially, none of these parishes will receive any substantial navigational benefits from this river improvement project, with its primary purpose of affording navigational benefits.
The project involves the realignment, improvement (constructing a navigational channel, etc.), and bank stabilization of approximately three hundred miles of waterways, mostly the Red River, between the Mississippi and the Texas border. The primary economic benefits will flow from affording water-navigation access to areas previously without it.
Concordia and Catahoula already have substantial navigable river frontage: Concordia, 59 miles along the Mississippi and 25 along portions of the Red River previously made navigable as a result of an earlier project; Catahoula, 96 miles as part of the earlier Red River-Black River-Ouachita River navigational project. Winn Parish presently borders the Red River for only three and one-half miles of river frontage, which will be shortened to one mile when the river is realigned; and this slight river frontage is bordered by a national forest area at least eight miles deep and is not readily susceptible to economic development as a result of water-navigational access.
The plaintiff railroads have failed to bear their burden of proving that the exclusion of these three non-benefitted parishes from the taxing district amounted to unfair discrimination against the parishes included. Thus, their exclusion did not constitute an unreasonable or arbitrary classification.
(2) Does the varying and unequal assessment of non-utility property in the seven parishes constitute prohibited discriminatory treatment of the plaintiff utilities?
Our state constitution provides that property taxes "shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax." La.Const. Art. X, Section 1 (1921). The plaintiff railroads allege both that this provision is offended by the varying and unequal assessment practices in the parishes included within the district and, also, that such unequal assessments deny the plaintiffs due process and the equal protection of the laws.
*486 The actual cash valuation and assessment of railroads and most utilities is fixed directly for all purposes by the state tax commission. La.R.S. 47:1979 et seq. (1950); Sherman, Public Utility Property Assessment in Louisiana, 4 La.L.Rev. 502 (1942). The state commission accepted the valuation of their properties by the plaintiff utilities. The latter valued their properties at original cost less depreciation. The commission ordered them assessed in each parish at 50% of such cash valuation. (Moreover, these values were frozen at a 1966 figure, per a court compromise.)
The plaintiffs do not contend that the figures so arrived at were excessive per se. They do not contend that other utilities similarly situated were treated differently.
Rather, if we understand the railroads' complaint, they contend that their own assessments are void or should be reduced because non-utility properties were assessed in varying and unequal percentages. These latter, in the main, are first valued by the local assessor in each parish.
The railroads arrive at the figure for lower percentage assessment for non-utility property by comparing actual sales in a given year with the assessed valuation of the property for a previous year. They then arrive at figures allegedly showing that the percentages of actual cash value used for non-utility assessment purposes vary in the respective parishes between 8% and 25%.
There is much merit to the defendant's argument that this selective use of sales for a given year may not adequately prove the percentage of valuation; but we need not decide this. Accepting for present purposes that the plaintiffs have proved varying assessment percentages of non-utility properties in the parishes concerned, such unequal treatment as between members of a different classification does not, by itself, constitute discriminatory treatment of the members of the publicutility classification.
The actual sales price may indeed be a factor in arriving at the "actual cash valuation" for tax-assessment purposes of properties with a ready market, such as homes or many non-utility properties. Cf., La.R.S. 47:1702 (1950). There may indeed be a legal duty to arrive at reasonably uniform practices with regard to property of a given classification, such as non-utility property. Bussie v. Long, 257 La. 623, 243 So.2d 776 (1971). But, whatever the issue as to lack of uniformity in non-utility assessments, we do not see its relevance to the present question.
The plaintiff utilities are valued, for tax purposes, at original cost, less depreciation, and then assessed at 50% of the "actual cash value" thus determined. This method of valuation, although not necessarily preferred, is an accepted mode of arriving at the "value" for tax purposes of utility property. 4 La.L.Rev. 532-546; 1 Bonbright, Valuation of Property, chapter xviii ("Valuation of Public Utilities and Other Enterprises for Tax Purposes"), p. 511 et seq. (1937).
No showing is made that, by so valuing and assessing railroad properties, they are caused to pay an unfairly disproportionate share of the tax burden.
If, for instance, the non-utility assessments were uniformly made at 25% of the actual 1970 sales or market value, this would not indicate that 50% of the original cost, less depreciation over the years, of utility property was unfairly disproportionate, or even disproportionate at all. The latter is simply a different method of arriving at the "actual cash value" of a different classification of property. It is not shown to be unreasonable or arbitrary for property with the peculiar characteristics of utility property and (unlike the former classification) with no ready market.
Under state law, the state tax commission fixes "for all purposes" the cash valuation and assessments of railroad utilities. La.R.S. 47:1979 (1950). Our state *487 constitution provides that "taxes shall be uniform upon the same class of subjects * * *." La.Const. Art. X, Section 1 (1921) (Italics ours.). There is no showing that state procedures for valuation and assessment of railroad utility property have been violated, nor that the state requirement of uniform taxation of such classification has not been followed.
Thus, we find without merit the contentions of denial of state rights through violation of state assessment requirements. For this reason (and also because, factually, we find no disproportionate valuation and assessment of utility properties), Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280 (1917), cited to us by the plaintiffs, is likewise inapplicable. There, a denial of equal protection to railroads by unconstitutional discrimination was held to have resulted from systematic undervaluation of nonutility properties in violation of the state constitution.[1] See 37 S.Ct. 681-682.
As to the claim of a denial of federal constitutional guarantees, the separate classification of railroad utilities for valuation and assessment for tax purposes is not shown by the record to be unreasonable or arbitrary, nor to result in an unfairly disproportionate tax burden. This being the case, we find no violation of federal right.
In rejecting an attack upon a somewhat similar state classification of utility and non-utility properties for tax purposes, the United States Supreme Court stated in Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 368-369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1949):
"That the states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriatethese are among the commonplaces of taxation and of constitutional law. [Citations omitted.] * * * [So] far as the Federal Constitution is concerned, a state can put railroad property into one pigeonhole and other property into another * * *."
3. Other Contentions.
Other contentions of unconstitutional or discriminatory taxation are made: (a) that the plaintiffs are arbitrarily taxed to support a local improvement from which they derive no benefit; and (b) the tax interferes with and restricts interstate commerce.
These contentions are factually unsupported by the record. Economic development of the area to which water access is made available by the project will, as noted by the trial court, benefit the railroad lines. The bank-stabilization incidental to the channel alignment is also shown to be a substantial benefit to the railroads.
However, more important, a general ad valorem tax affecting all properties within a district does not require special benefits to each to justify its validity; nor does its application to common carriers, absent circumstances not here present, constitute a prohibited burden upon interstate commerce. See St. Louis & S. W. Ry. Co. v. Nattin, 277 U.S. 157, 48 S.Ct. 438, 72 L. Ed. 830 (1928), rejecting a similar attack by a railroad upon a property tax imposed for a local road district. See also: Ott v. Mississippi Valley Barge Line Co., 336 U. S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949); Nashville C. & St. L. Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933).

*488 Decree

For the reasons assigned, we affirm the judgment of the district court dismissing this suit. The plaintiffs-appellants are to pay all costs of these proceedings.
Affirmed.
NOTES
[1] Unlike the Louisiana constitution, which required uniformity of taxation for property within each classification, the Kentucky constitution provided for uniformity of taxation as to all property. 37 S.Ct. 677, 679.