444 So.2d 600 (1983)
R.J. D'HEMECOURT PETROLEUM, INC., et al.
v.
Shirley McNAMARA, Secretary of the Department of Revenue and Taxation, State of Louisiana.
No. 83-CA-1231.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied February 2, 1984.
*601 Frank J. Uddo, New Orleans, for plaintiff-appellee.
Howard M. Romaine, Baton Rouge, for defendant-appellant.
WATSON, Justice.
In this class action suit by Louisiana retail gasoline merchants, plaintiffs asked that LSA-R.S. 47:353[1] be declared unconstitutional as to them and occupational license taxes paid under protest be refunded. The trial court declared the law unconstitutional and ordered the refunds. LSA-R.S. 47:2110.[2] The Secretary of the Louisiana Department of Revenue and Taxation has appealed.[3]
At the outset of trial, all parties stipulated to the class as being all retail gasoline merchants who paid the occupational license tax under protest for the years 1979 and 1980 (Tr. 3). A list of such merchants was placed into the record (S-1).
A stipulation has the effect of a judicial admission or confession,[4] which binds all parties and the court. Placid Oil Company v. A.M. Dupont Corporation, 244 La. 1075, 156 So.2d 444 (1963). Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Wickliffe v. Cooper and Sperrier, 161 La. 417, 108 So. 791 (1926). Such agreements are the law of the case.[5] The class action was appropriate.
In declaring LSA-R.S. 47:353 unconstitutional, the trial court found that its interaction with federal "margin of profits" regulations[6] *602 produced a discriminatory effect upon retail gasoline merchants in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and Art. I, § 3, Louisiana Constitution of 1974.[7]
Under Section 353, the tax becomes larger as gross sales increase. Although the wholesale price of gasoline soared in 1979 and 1980 due to cutbacks in supply by oil producing countries, plaintiffs' retail profits were curtailed by federal limitations. Plaintiffs claim that these federal limits on their profits distinguish them from other retail merchants resulting in a discriminatory tax burden from the occupational license tax.
Statutory classifications do not violate equal protection guarantees if they bear a rational relation to a legitimate governmental purpose. Statutes are subject to a higher level of scrutiny if they interfere with the exercise of a fundamental right or employ a suspect classification. Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The tax on retail gasoline merchants does neither.
Legislators have broad latitude in creating tax classifications. In Regan v. Taxation with Representation of Washington, ___ U.S. ___ at ___, 103 S.Ct. 1997 at 2002, 76 L.Ed.2d 129 at 138 (1983) the court stated:
"`The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized.... in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' Madden v. Kentucky, 309 U.S. 83, 87-88, 60 S.Ct. 406, 407-408, 84 L.Ed. 590 (1940) (footnotes omitted)."
State taxes with the collateral effect of restricting or even destroying a business or occupation have been sustained. Lehnhausen v. Lake Shore Auto Parts, 410 U.S. 356, 360, 93 S.Ct. 1001, 1004, 35 L.Ed.2d 351, 355 (1973).
In Acorn v. City of New Orleans, 377 So.2d 1206 (La., 1979) there was a constitutional challenge to a city ordinance which imposed a one hundred dollar annual charge on each parcel of real property separately listed on the tax rolls. Although the tax had a disproportionate impact on owners of small and large tracts, the city ordinance was upheld:
"The Equal Protection Guarantee of the Fourteenth Amendment does not take from the States all power of classification. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, [2567], 49 L.Ed.2d 520. Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern. New York Transit Authority v. Beazor, 440 *603 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587; Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, [1732], 32 L.Ed.2d 285. Cf. James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678. The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility...." 377 So.2d at 1216-1217.
To be unconstitutional, a classification must be manifestly arbitrary and unreasonable, and not possibly so. Gulf States Utilities Co. v. Traigle, 310 So.2d 78 (La., 1975). A discriminatory purpose is not presumed. Parties attacking a statute must bear the burden of proving clear and intentional discrimination. Louisiana & Arkansas Railway Company v. Goslin, 300 So.2d 483 (La., 1974).
These service station owners lost profits because the product they sold cost more and there was a diminished quantity available for sale. This situation was exacerbated by federally imposed profit limitations. However, no evidence has been offered that other retail merchants subject to the tax did not suffer from similar adverse circumstances.[8] Thus, these retail gasoline merchants have failed to distinguish themselves from other retail merchants. The pressures of the market place could have acted in the same manner as the federal profit controls to limit other retailers' gross profits.
The statute creates a class of retailers taxed on a sliding scale based on gross profits. It has a rational relationship to a legitimate government purpose, raising revenue. While the tax may have a disproportionately greater impact upon retailers subject to federal profit controls, no violation of equal protection has been proven.
For the reasons assigned, the judgment of the trial court is reversed and plaintiffs' suit is dismissed.
REVERSED.

APPENDIX
LSA-R.S. 47:353 provides:
"For every business of selling merchandise, soda water, ice cream, confections, soda pop, coca-cola, cherocola, grapico, or other similar soft drinks or beverages or refreshments, at retail; or for the business of operating a restaurant, tea room, coffee house or other eating house, establishment or place where any charge whatsoever is made for any food, drink or service, whether attached to or conducted separate and apart from any other business; or for the business of operating vending machines or weighing machines, except those operated for the cooling and vending of bottled soft drinks, not otherwise provided for by this chapter, or by special laws, whether the business be conducted as principal, agent on commission or otherwise, the license shall be based on the gross sales. The amount of this license shall be as shown in the following table:
"If the Gross Sales are:

As Much As But Less Than The Annual License
 Shall Be:
$ 0 $ 5,000 $ 5
 5,000 10,000 10
 10,000 15,000 15
 15,000 20,000 20
 20,000 25,000 25
 25,000 30,000 30
 30,000 40,000 35
 40,000 50,000 50
 50,000 75,000 60
 75,000 100,000 90
 100,000 150,000 120
 150,000 200,000 180
 200,000 250,000 250
 250,000 300,000 300

*604
 300,000 400,000 360
 400,000 500,000 500
 500,000 600,000 650
 600,000 750,000 800
 750,000 1,000,000 900
1,000,000 1,500,000 1,200
1,500,000 2,000,000 1,800
2,000,000 2,500,000 2,400
2,500,000 3,000,000 3,000
3,000,000 3,500,000 3,600
3,500,000 4,000,000 4,200
4,000,000 4,500,000 4,800
4,500,000 5,000,000 5,400
5,000,000 ......... 6,000

"For each separate establishment where more than one such establishment is kept or conducted by the same person, there shall be a separate license, as herein fixed, provided that in the case of a business or operating coin vending or weighing machines, a separate license shall not be required for each place or establishment where the machines are operated. No license shall be imposed under this Chapter for selling or serving food or drink for charitable or religious purposes.
"In calculating the gross sales at retail gasoline filling and service stations, the taxpayer shall exclude therefrom that part of the purchase price paid by him for gasoline, motor fuels, or lubricating oils as shall equal the manufacturer's or dealer's license, privilege, or excise tax levied by federal or state statutes on the manufacturing, handling, storing, selling or consuming of gasoline, motor fuels or lubricating oils; but nothing herein contained shall be construed as amending, altering, or modifying any other section of this Chapter."
The Occupational License Tax scheme is contained in LSA-R.S. 47:341-47:405. Effective January 1, 1982, the power to collect annual occupational license taxes was transferred from the State to the governing authority of each local governmental subdivision.
LSA-R.S. 47:341(B) now provides:
"The annual license tax imposed on any individual, corporation, partnership, or other legal entity shall not exceed the tax which could have been imposed pursuant to Article VI, Section 28 of the Constitution of Louisiana and to R.S. 47:342-47:405 on such individual, corporation, partnership, or other legal entity by a local governmental subdivision on December 31, 1981, and such tax shall be subject to all exemptions, limitations, and provisions of law which were in effect on December 31, 1981."
LSA-R.S. 47:1576 provides:
"A. A right of action is hereby created to afford a remedy at law for any person aggrieved by the prohibition of courts restraining the collection of tax, penalty, interest, or other charges imposed in this Subtitle. The person resisting the payment of any amount found due by the collector, or of enforcement of any provisions of this Subtitle, shall remit the amount found due to the collector and at that time shall give the collector notice of his intention to file suit for the recovery thereof. Upon receipt of this notice, the amount remitted shall be placed in an escrow account and held by the collector or his duly authorized representatives for a period of thirty days. If suit is filed within the thirty-day period for the recovery of such amount, the funds in the escrow account shall be further held pending the outcome of the suit. If the person prevails, the collector shall refund the amount to the claimant, with interest at the rate of six percent per annum covering the period from the date the funds were received by the collector to the date of refund.
"B. This Section shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter, for a full and complete adjudication of any and all questions arising in the enforcement of this Subtitle as to the legality of any tax accrued or accruing or the method of enforcement thereof. In such action, service of process upon the collector shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.

*605 "C. This Section shall be construed to provide a legal remedy in the state or federal courts, by action at law, in case such taxes are claimed to be an unlawful burden upon interstate commerce, or the collection thereof, in violation of any Act of Congress or the United States Constitution, or the Constitution of the state of Louisiana, or in any case where jurisdiction is vested in any of the courts of the United States.
"D. Upon request of a person and proper showing by such person that the principle of law involved in an additional assessment is already pending before the courts for judicial determination, such person, upon agreement to abide by the decision of the courts, may remit the additional assessment under protest, but need not file an additional suit. In such cases the tax so paid under protest shall be placed in an escrow account and held by the collector until the question of law involved has been determined by the courts and shall then be disposed of as therein provided."
This provision was amended by two different acts of the 1982 legislative session.
ON APPLICATION FOR REHEARING
CALOGERO, Justice.
I would grant a rehearing to reexamine the constitutionality of La.R.S. 47:353 as it applied to gasoline retailers in 1979 and 1980.
Although La.R.S. 47:353 on its face treated all retailers evenhandedly in setting annual fees for occupational licenses, its effect on gasoline retailers during the time in question resulted in their having to sustain a more severe tax burden than did all other respective retailers during the same time period. This more severe burden was not, in my view, rationally related to any legitimate state end and so ran counter to the equal protection guarantees of the state and federal constitutions.
The apparent governmental purpose in instituting the occupational license tax was to raise state tax revenues. The means of a graduated fee schedule for retailers was designed to place the responsibility for higher license fees on those having higher total gross sales. The rationale behind the scheme was that those enjoying higher gross sales more than likely would enjoy higher profits and therefore should be made to pay a higher occupational tax. However, higher gross sales for the gas retailer during the pertinent tax periods involved in this litigation did not mean that he enjoyed higher profits because of the federal "margins of profit" regulations[1] imposed upon him. The impact on the gas retailers of the upward sliding scale for occupational license fees was at least substantially disproportionate vis a vis other retailers since, among retailers, the gasoline retailer alone was affected by this margin of profits regulation. As a consequence, it cannot be said that gas retailers and other retailers were similarly situated. Unlike the scheme as applied to other retailers, there was no rational connection between the gross sales of the gas retailers and their ability to pay increased occupational license fees. Their profit per gallon was static notwithstanding substantially increasing gas prices.
Accordingly, because La.R.S. 47:353 during the time in question affected not only those retailers to whom higher gross sales meant higher profits, but also those retailers (gasoline) to whom higher gross sales did not mean higher profits (because of the imposition of the federal margin of profits regulation), the statutory classification may have been overinclusive and so subject to an equal protection challenge. It is for these reasons I would grant a rehearing.
NOTES
[1] See appendix to this opinion.
[2] LSA-R.S. 47:2110 provides, in pertinent part:

"A. No court of this state shall issue any process whatsoever to restrain the collection of an ad valorem tax imposed by the state, or by any political subdivision thereof, under authority granted to it by the legislature or by the constitution. Any person resisting the payment of any amount of tax found due, or the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give the officer notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If suit is filed within such time for the recovery of the tax, such amount so segregated shall be further held pending the outcome of the suit. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per centum per annum for the period from the date such funds were received by the officer to the date of such refund."
[3] LSA-Const. Art. V, § 5(D) provides:

"In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional...."
See Southland Corp. v. Collector of Revenue for Louisiana, 318 So.2d 23 (La., 1975).
[4] LSA-C.C. art. 2291 provides:

"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
"It amounts to full proof against him who has made it.
"It can not be divided against him.
"It can not be revoked, unless it be proved to have been made through an error in fact.
"It can not be revoked on a pretense of an error in law."
[5] The argument that LSA-R.S. 47:1576 provides an exclusive means by which taxpayers may judicially dispute tax assessments is pretermitted. The parties here are bound by their stipulation.
[6] 10 C.F.R. Section 212.93 places a ceiling on the maximum cents per gallon profit which can be earned by retail gasoline merchants. Regardless of the price per gallon at which the gasoline is ultimately sold, a retailer cannot earn in profit more than the federally imposed limit. In June, 1979, the price margin was fixed at 15.4 cents a gallon. In December, 1979, it was adjusted to 16.1 cents; in June, 1980, to 16.8 cents, and in December, 1980, to 17.7 cents (Tr. 15).
[7] The trial court found it unnecessary to determine whether a 1979 amendment to LSA-R.S. 47:351 affected the constitutionality of Section 353. LSA-R.S. 47:351, as amended, reduces the taxes paid by petroleum wholesalers by fifty percent until such time as federal margin-of-profit controls on gasoline are no longer applicable to the taxpayer's business. Such federal controls were lifted in February, 1981. (Tr. 15)
[8] The retail gasoline merchants offered two witnesses, one of whom the trial court accepted as an expert in gasoline retail merchandising:

"Q. Now, Mr. Bonnaffons, have you formed an opinion as to the effect of the occupational license tax as it was in effect in 1979 and 1980 on the gasoline retailers?
"A. Yes, sir, I have.
"Q. Would you please tell it to the Court?
"A. Well, I think that it is grossly unfair and it has been discriminatory because we were probably the only category of business who suffered such an increase in an occupational license tax because of actions of foreign countries, for example.* * *" (emphasis added) (Tr. 23)
[1] 10 C.F.R. § 212.93 set a ceiling on the cents per gallon profit that gasoline retailers could earn, regardless of the selling price per gallon. Therefore while the margin of profit allowed gas retailers per gallon under the federal regulations rose almost imperceptibly during 1979 and 1980, the price of that gallon of gasoline (and therefore the gross sales of gasoline retailers) increased over 100 percent.