# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-143 consolidated with 13-144


KYI LORMAND

VERSUS

LOUISIANA STATE RACING COMMISSION


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 12-C-5173-A C/W 12-C-5179-A
HONORABLE JAMES PAUL DOHERTY  JR., DISTRICT JUDGE

**********

**SHANNON J. GREMILLION
JUDGE**

**********

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**


**Holden Hoggatt**
**Hoggatt Law Group, APLC**
**120 Caillouet Place**
**Lafayette, LA 70501**
**(337) 514-4551**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Kyi Lormand**

**Rhea P. Loney**
**Assistant Attorney General**
**320 N. Carrollton, Suite 2-B**
**New Orleans, LA 70119**
**(504) 483-4000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Louisiana State Racing Commission**

**GREMILLION, Judge.**

Kyi Lormand appeals the trial court's decision affirming the Louisiana State Racing Commission's decision to suspend him from horse training for three years and fine him $2,500 because a horse he trained tested positive for dermorphin, an opiod naturally found in the skins of South American frogs. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On May 16, 2012, He's A Slewvescent, a horse owned and trained by Lormand, finished second in a race at Evangeline Downs in St. Landry Parish. Routine blood and urine samples were obtained from He's A Slewvescent. It is undisputed that the horse's blood and urine tested positive for dermorphin. Lormand contends that he contacted the horse's veterinarian, Dr. Kyle Hebert, about some respiratory difficulties the horse had, and that Dr. Hebert administered an injection of Lasix and "an herbal enhancement." While he did not accuse Dr. Hebert explicitly, Lormand offered no other explanation for how the horse was administered dermorphin.

Lormand was advised of his right to have the results subjected to split sample testing by a referee laboratory. Only one referee laboratory was offering such split sample testing. Lormand exercised his right, and the referee laboratory reported the samples tested positive for dermorphin.

Lormand was suspended by the stewards and fined $1,000. The stewards also referred Lormand to the Louisiana Racing Commission for further disciplinary action. The Commission met and heard Lormand's adjudication on September 28, 2012. Lormand appeared before the Commission in proper person. He stipulated to the chain of custody of the samples taken from the horse, that the laboratory

found dermorphin in the samples, and "that [he had] no problem with those findings and that [he stipulated to] the introduction of [the] positive report and the science behind that particular report." The written stipulation merely provided that Mr. Lormand stipulated to the chain of custody of the samples.

The commission heard two days of testimony and argument in several cases, all of which involved actions against trainers over the alleged use of dermorphin. Decisions in the cases were rendered by the commission after all cases had been heard. The commission handed down the suspension and fine to Lormand, who sought judicial review before the Twenty-seventh Judicial District Court. Lormand's case was consolidated for review with that of Anthony C. Agilar, whose matter has also been consolidated with Lormand's on appeal. The trial court affirmed the commission's decision. This appeal followed.

**ASSIGNMENTS OF ERROR**

Lormand assigns the following as errors of the trial court:

1. That the Trial Court found that the altered record filed by the Commission with the Trial Court was "the complete record of the proceeding" as required and contemplated by La R.S. 49:964;

2. That the Trial Court found that the Commission may introduce and rely upon evidence admitted at the Commission proceeding but may omit and withhold the same evidence regarding Dermorphin from the "entire record" required for judicial review, including the basis for stipulations, relevant scientific evidence, relevant testimony, and exculpatory documentary evidence when such evidence affects substantial rights of the Appellants;

3. That the Trial Court found that the stipulations made by Appellants for purposes of the agency hearing may function to render incompetent evidence competent for purposes of Judicial Review;

4. The Trial Court did not disregard the purported stipulations as incompetent evidence despite the fact that the stipulations were not properly identified, marked and filed into the record;

5. That the Trial Court denied Appellants' Motion to Strike the record as in violation of La.R.S. 49:964;

6. That the Trial Court allowed the Commission to modify, alter, re-create, withhold and manipulate the Record submitted to the Trial Court such that it was unfairly and prejudicially different from the true record of the proceeding;

7. That the Commission complied with the mandate that the Commission allow the parties to choose from a list of referee laboratories and that substantial rights of the Appellants were not thereby prejudiced;

8. That the Trial Court found that substantial rights of the Appellants were not unfairly prejudiced by the Commission's failure, prior to the hearing, to make available and provide actual notice of the evidence to be used against Appellants, particularly when incorporated by reference to other evidence not provided nor made available to Appellants;

9. That the Trial Court was not required to disregard incompetent evidence in its review of the agency record, including purported scientific evidence which does not satisfy the constitutional requirements governing the admissibility of scientific evidence;

10. That the agency may allow introduction of evidence obtained in violation of the Rules of Racing, which imposes only a minimal standard of Due Process;

11. That the Trial Court found that the Commission did not consider and weigh the withheld Dermorphin evidence and testimony prior to issuing its ruling despite having received the evidence out of order, in a consolidated manner where all the Dermophin-related matters were heard together and upon irregular procedure, and all of the rulings were issued after having heard the entirety of the evidence regarding Dermorphin;

12. That the Trial Court found that the purported stipulations extended to waive the right to select an authorized referee laboratory;

13. The Trial Court allowed the Commission to require evidence offered by licensees at an agency hearing to meet a higher standard of admissibility than is required of evidence offered by the Commission, specifically that the licensees' evidence be certified or notarized as a condition of admissibility whereas the evidence introduced by the Commission was neither properly certified, introduced, nor notarized; and,

3

14. That the Trial Court affirmed the agency decision without evidence in the record showing that the Commission took Notice of Judicially Cognizable facts or otherwise verified the reliability or methodology of the new Dermorphin test.

## ANALYSIS

Horse racing is heavily regulated. The Louisiana Legislature has created a system of regulations found in Title 4, Chapter 4, of the Louisiana Revised Statutes. The scheme requires the licensure of horse trainers, jockeys, and owners. The Louisiana State Racing Commission was created to fulfill the objectives of the regulatory scheme. The commission is responsible for promulgating regulations governing racing and investigating and resolving alleged violations.

The regulations that apply to pharmaceuticals administered to horses are found in La.Admin.Code tit. 35, § I.1501 et seq. Section 1501(A) provides:

> Except as a licensed veterinarian may otherwise be permitted by law or in his or her general veterinary practice, the administration, use, application and/or possession of any narcotic, stimulant, depressant, or local anesthetic are prohibited within the confines of a race track or within its stables, buildings, sheds or grounds, or within an auxiliary stable area (as defined in §5705) where horses are lodged or kept which are eligible to race over a race track of any association holding a race meeting.

Section 1505 governs the administration of anti-inflammatory medication, which may not be administered within twenty-four hours of a race in which the horse is entered. "Bleeder" medication is regulated by Section 1507 and may not be administered within four hours of a race the horse is to run.[1] Allowed bleeder medication is listed in Section 1509.

---

[1] "Bleeders" are horses that have suffered exercise-induced pulmonary hemorrhaging. La.Admin.Code tit. 35, § I.1507.

4

Chapter 17 of Title 35, part I, of the Louisiana Administrative Code is entitled, "Corrupt and Prohibited Practices." This chapter, too, provides for the administration of drugs to horses. Section 1711 provides,

> No medication shall be administered to a horse to be entered or entered to race as may be provided in Chapter 15. If it is necessary to do so, it must be reported to the stewards by the trainer and the horse shall be scratched, if entered, as ineligible to run.

Only substances approved by the United States Food and Drug Administration for human or animal use, ingestion or injection, or for testing purposes are permitted. La.Admin.Code tit. 35, § I.1707. Controlled medication is permitted under the conditions established in Chapter 15. La.Admin.Code tit. 35, § I.1725. Owners, trainers, and grooms must guard horses to prevent substances not permitted in Chapter 15 from being administered to the horses they have in their care. La.Admin.Code tit. 35, § I.1727.

Prohibited drugs and substances are assigned to five classes, as defined in *Uniform Classification Guidelines for Foreign Substances*, a publication of the Association of Racing Commissioners International (RCI). La.Admin.Code tit. 35, § I.1795. Unknown or unidentified substances not listed in the RCI guidelines are to be appropriately classified by the state chemist. *Id.* The RCI guidelines are used to determine the appropriate sanction for a violation. *See* La.Admin.Code tit. 35, § I.1797. A Class I violation is the most severe, punishable by a license suspension of not less than one year and not more than five years, a fine of $5,000, and redistribution of the purse the horse won. *Id.* Dermorphin was classified by RCI as a Class I substance prior to the date of He's A Slewvescent's race.

Horses are tested in a detention barn. La.Admin.Code tit. 35, § I.1753. The samples to be tested are split into roughly equal portions. La.Admin.Code tit. 35, §

I.1775. One portion is sent to the state chemist for analysis; the other is held for "referee" testing should the state chemist's analysis conclude that prohibited substances were detected. *Id.* A positive finding by the state chemist is prima facie evidence that prohibited substances have been administered to a horse and that the owner, trainer, and/or groom has been negligent in the handling of the horse. La.Admin.Code tit. 35, § I.1729.

Lormand's first six assignments of error address alleged irregularities in the record. The proceedings held by the commission on September 27-28, 2012, all concerned alleged Class I violations involving dermorphin. The commission heard evidence in every case before addressing its findings in the individual cases. When the matter came before the trial court on judicial review, only the portion of the record the commission found relevant to Lormand's case was included.

Louisiana Revised Statute 49:964, part of the Administrative Procedure Act, governs judicial review of administrative adjudications. Section 964 requires that the review be "confined to the record." "In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court." *Id.* The reviewing trial court may reverse the agency's decision if the appellant's substantive rights have been prejudiced because the agency's findings are in violation of statutory or constitutional provisions; in excess of the agency's statutory authority; made upon unlawful procedure; affected by other error of law; arbitrary or capricious or characterized by an abuse of, or clearly unwarranted exercise of, discretion; or not supported and sustained by a preponderance of the evidence. In determining whether the adjudication was supported and sustained by a preponderance of the evidence, the trial court is

6

directed to make its own findings of fact, giving due regard to the agency's determination of credibility issues. *Id.*

Lormand stipulated to the chain of custody of the samples taken from He's A Slewvescent, the positive tests for dermorphin, and "the science behind those tests." The trial court found on its review that the stipulation essentially obviated the need for further inquiry of the commission's findings. We agree.

Stipulations have the effect of a judicial admission and are binding upon parties and the trial court when they are not in derogation of law. *R.J. D'Hemecourt Petroleum, Inc. v. McNamara,* 444 So.2d 600 (La.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92 (1984). Thus, the facts and record the trial court had before it were those portions specifically relevant to Lormand's case, including the stipulation that dermorphin was detected in his horse's samples. Lormand stipulated to the science behind the sampling and testing.

The trainer is the "absolute insurer" of the horse's condition. La.R.S. 4:150. Substances that are not permitted are, by exclusion, prohibited under the regulations governing horse racing. Dermorphin is not a permitted substance. Once Lormand stipulated to the presence of dermorphin in the horse's samples, the commission had no need of any technical testimony on the issue of dermorphin. Lormand stipulated to the presence of a Class I drug in his horse's system.

The stipulation also obviates consideration of assignments of error 8, 9, 10, 11, and 14, all of which challenge the competency of the evidence presented to the commission. The only relevant evidence presented to the commission was Lormand's stipulation to a positive finding of dermorphin in He's A Slewvescent's system.

7

Assignment 7 argues that the trial court erred in finding that the commission fulfilled its mandate to allow Lormand to choose from a list of referee laboratories to conduct a split sample test. The requirement is found in La.Admin.Code tit. 35, § I.1775. It provides in pertinent part, "The commission shall provide a list of referee laboratories which must be able to demonstrate competency for that drug or substance at the estimated concentration reported by the primary laboratory, from which a trainer must select one." The commission has been authorized to choose referee laboratories. In determining which laboratories to include, the commission must have discretion. If only one laboratory is deemed competent to referee samples, or if only one laboratory agrees to act as a referee laboratory, that certainly cannot invalidate the procedure. The testing must take place. Accordingly, we reject Lormand's assignment of error 7.

Any discussion of Lormand's assignment of error 12 is also obviated.

By assignment of error 13, Lormand challenges a commission rule requiring that the evidence he wished to introduce be certified or notarized before it is admitted. Lormand failed to brief this issue in violation of Uniform Rules—Courts of Appeal, Rule 1-3. Furthermore, Lormand failed to identify any evidence that he wanted to introduce and was not allowed to, or that he attempted to introduce at the adjudication hearing and was not allowed to. No such attempt was made on the record.

## CONCLUSION

Under the racing regulations and statutes, substances not permitted are prohibited. Dermorphin is not permitted. The trainer, as the "absolute insurer" of the condition of his horse, bears responsibility for any prohibited substances detected.

The decision of the trial court is affirmed. All costs of this appeal are taxed to appellant, Kyi Lormand.

**AFFIRMED.**