GREMILLION, Judge.
hMr. Anthony Agilar, a licensed horse trainer, appeals the adverse ruling of the trial court in its judicial review of his suspension by the Louisiana State Racing Commission. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On May 16, 2012, Bad John, a horse trained by Agilar, was entered in a race at Evangeline Downs. Bad John won that race and was escorted to the test barn for blood and urine sampling. Those samples were submitted to the Louisiana State University Veterinary School for analysis, which detected the presence of dermor-phin, an opioid found in the skins of certain South American frogs. Split sample testing also detected dermorphin. A hearing before the Evangeline Downs stewards resulted in a six-month suspension for Agi-lar, and his case was referred by the stewards to the Louisiana State Racing Commission.
On May 31, 2012, another of Agilar’s horses, LaPile Creek, ran and won at Evangeline Downs. LaPile Creek tested positive for dermorphin following its win. Agilar testified before the racing commission that he did not exercise his right to test LaPile Creek’s split sample “because I know the horse had the medicine in it[.]” LaPile Creek had run before Bad John’s split sample had been tested.
Agilar’s veterinarian, Dr. Kyle Hebert, or his associate, Dr. Stephanie Frauning, administered what they told Agilar were herbal remedies. Agilar blamed Dr. Hebert or Dr. Frauning for administering the *1031 dermorphin. Indeed, Agilar testified that Dr. Hebert told him that the substance he was giving the horses was “just a natural herb that can’t be detected.” He further likened its effects to that of Equipoise, a formerly permitted drug.
|2The Louisiana State Racing Commission heard two days of testimony and argument in several cases, all of which involved actions against trainers over the alleged use of dermorphin. During Agi-lar’s hearing, the commission’s attorney began to question the LSU Veterinarian School tester, Dr. Steven Barker. Agilar said that he had no questions about the testing and verbally stipulated to its accuracy. Agilar had already entered into written stipulations regarding the chain of custody of Bad John’s and LaPile Creek’s samples.
Decisions in the cases were rendered by the commission after all cases had been heard. The commission handed down a three-year suspension and fine to Agilar, who sought judicial review before the Twenty-seventh Judicial District Court. Agilar’s case was consolidated for review with that of Kyi Lormand, whose matter has also been consolidated with Agilar’s on appeal. The trial court affirmed the commission’s decision. This appeal followed.
ASSIGNMENTS OF ERROR
Agilar assigns the following as errors of the trial court:
1. That the Trial Court found that the altered record filed by the Commission with the Trial Court was “the complete record of the proceeding” as required and contemplated by La[.] R.S. 49:964;
2. That the Trial Court found that the Commission may introduce and rely upon evidence admitted at the Commission proceeding but may omit and withhold the same evidence regarding Dermorphin from the “entire record” required for judicial review, including the basis for stipulations, relevant scientific evidence, relevant testimony, and exculpatory documentary evidence when such evidence affects substantial rights of the Appellants;
3. That the Trial Court found that the stipulations made by Appellants for purposes of the agency hearing may function to render incompetent evidence competent for purposes of Judicial Review;
4. The Trial Court did not disregard the purported stipulations as incompetent evidence despite the fact that the stipulations were not properly identified, marked and filed into the record;
|s5. That the Trial Court denied Appellants’ Motion to Strike the record as in violation of La R.S. 49:964;
6. That the Trial Court allowed the Commission to modify, alter, re-create, withhold and manipulate the Record submitted to the Trial Court such that it was unfairly and prejudicially different from the true record of the proceeding;
7. That the Commission complied with the mandate that the Commission allow the parties to choose from a list of referee laboratories and that substantial rights of the Appellants were not thereby prejudiced;
8. That the Trial Court found that substantial rights of the Appellants were not unfairly prejudiced by the Commission’s failure, prior to the hearing, to make available and provide actual notice of the evidence to be used against Appellants, particularly when incorporated by reference to other evidence not provided nor made available to Appellants;
9. That the Trial Court was not required to disregard incompetent evidence in its review of the agency record, *1032 including purported scientific evidence which does not satisfy the constitutional requirements governing the admissibility of scientific evidence;
10. That the agency may allow introduction of evidence obtained in violation of the Rules of Racing, which imposes only a minimal standard of Due Process;
11. That the Trial Court found that the Commission did not consider and weigh the withheld Dermorphin evidence and testimony prior to issuing its ruling despite having received the evidence out of order, in a consolidated manner where all the Dermophin-relat-ed matters were heard together and upon irregular procedure, and all of the rulings were issued after having heard the entirety of the evidence regarding Dermorphin;
12. That the Trial Court found that the purported stipulations extended to waive the right to select an authorized referee laboratory;
13. The Trial Court allowed the Commission to require evidence offered by licensees at an agency hearing to meet a higher standard of admissibility than is required of evidence offered by the Commission, specifically that the licensees’ evidence be certified or notarized as a condition of admissibility whereas the evidence introduced by the Commission was neither properly certified, introduced, nor notarized; and,
|414. That the Trial Court affirmed the agency decision without evidence in the record showing that the Commission took Notice of Judicially Cognizable facts or otherwise verified the reliability or methodology of the new Dermorphin test.
ANALYSIS
Horse racing is heavily regulated. The Louisiana Legislature has created a system of regulations found in Title 4, Chapter 4, of the Louisiana Revised Statutes. The scheme requires the licensure of horse trainers, jockeys, and owners. The Louisiana State Racing Commission was created to fulfill the objectives of the regulatory scheme. The commission is responsible for promulgating regulations governing racing and investigating and resolving alleged violations.
The regulations that apply to pharmaceuticals administered to horses are found in La.Admin.Code tit. 35, § 1.1501 et seq. Section 1501(A) provides:
Except as a licensed veterinarian may otherwise be permitted by law or in his or her general veterinary practice, the administration, use, application and/or possession of any narcotic, stimulant, depressant, or local anesthetic are prohibited within the confines of a race track or within its stables, buildings, sheds or grounds, or within an auxiliary stable area (as defined in § 5705) where horses are lodged or kept which are eligible to race over a race track of any association holding a race meeting.
Section 1505 governs the administration of anti-inflammatory medication, which may not be administered within twenty-four hours of a race in which the horse is entered. “Bleeder” medication is regulated by Section 1507 and may not be administered within four hours of a race the horse is to run.[1] Allowed bleeder medication is listed in Section 1509.
| ¡¡Chapter 17 of Title 35, part I, of the Louisiana Administrative Code is entitled, “Corrupt and Prohibited Practices.” This *1033 chapter, too, provides for the administration of drugs to horses. Section 1711 provides,
No medication shall be administered to a horse to be entered or entered to race as may be provided in Chapter 15. If it is necessary to do so, it must be reported to the stewards by the trainer and the horse shall be scratched, if entered, as ineligible to run.
Only substances approved by the United States Food and Drug Administration for human or animal use, ingestion or injection, or for testing purposes are permitted. La.Admin.Code tit. 35, § 1.1707. Controlled medication is permitted under the conditions established in Chapter 15. La.Admin.Code tit. 35, § 1.1725. Owners, trainers, and grooms must guard horses to prevent substances not permitted in Chapter 15 from being administered to the horses they have in their care. La.Admin.Code tit. 35, § 1.1727.
Prohibited drugs and substances are assigned to five classes, as defined in Uniform Classification Guidelines for Foreign Substances, a publication of the Association of Racing Commissioners International (RCI). La.Admin.Code tit. 35, § 1.1795. Unknown or unidentified substances not listed in the RCI guidelines are to be appropriately classified by the state chemist. Id. The RCI guidelines are used to determine the appropriate sanction for a violation. See La.Admin.Code tit. 35, § I. 1797. A Class I violation is the most severe, punishable by a license suspension of not less than one year and not more than five years, a fine of $5,000, and redistribution of the purse the horse won. Id. Dermorphin was classified by RCI as a Class I substance prior to the date of Bad John’s race.
Horses are tested in a detention barn. La.Admin.Code tit. 35, § 1.1753. The samples to be tested are split into roughly equal portions. La.Admin.Code tit. 35, § 1,11775. One portion is sent to the state chemist for analysis; the other is held for “referee” testing should the state chemist’s analysis conclude that prohibited substances were detected. Id. A positive finding by the state chemist is prima facie evidence that prohibited substances have been administered to a horse and that the owner, trainer, and/or groom has been negligent in the handling of the horse. La.Admin.Code tit. 35, § 1.1729.
Agilar’s first six assignments of error address alleged irregularities in the record. The proceedings held by the commission on September 27-28, 2012, all concerned alleged Class I violations involving dermorphin. The commission heard evidence in every case before addressing its findings in the individual cases. When the matter came before the trial court on judicial review, only the portion of the record the commission found relevant to Agilar’s case was included.
Louisiana Revised Statute 49:964, part of the Administrative Procedures Act, governs judicial review of administrative adjudications. Section 964 requires that the review be “confined to the record.” It further provides that the trial court may take proof of alleged irregularities in procedure before the agency. The reviewing trial court may reverse the agency’s decision if the appellant’s substantive rights have been prejudiced because the agency’s findings are in violation of statutory or constitutional provisions; in excess of the agency’s statutory authority; made upon unlawful procedure; affected by other error of law; arbitrary or capricious or characterized by an abuse of, or clearly unwarranted exercise of, discretion; or not supported and sustained by a preponderance of the evidence. In determining whether the adjudication was supported and sustained by a preponderance of the *1034 evidence, the trial court is directed to make its own findings of fact, giving due regard to the agency’s determination of credibility issues.
[7Agilar stipulated to the chain of custody of the samples taken from Bad John and LaPile Creek, the positive tests for dermorphin, and “the science behind those tests.” The trial court found on its review that the stipulation essentially obviated the need for further inquiry of the commission’s findings. We agree.
Stipulations have the effect of a judicial admission and are binding upon parties and the trial court when they are not in derogation of law. R.J. D’Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600, 601 (La.1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984). Thus, the fact and record the trial court had before it were those portions specifically relevant to Agilar’s case, including the stipulation that dermorphin was detected in his horses’ samples. Agi-lar stipulated to the science behind the sampling and testing.
The trainer is the “absolute insurer” of the horse’s condition. La.R.S. 4:150. Substances that are not permitted are, by exclusion, prohibited under the regulations governing horse racing. Dermorphin is not a permitted substance. Once Agilar stipulated to the presence of dermorphin in the horses’ samples, the commission had no need of any technical testimony on the issue of dermorphin. Agilar stipulated to the presence of a Class I drug in his horses’ systems.
The stipulation also obviates consideration of assignments of error 8, 9, 10, 11, and 14, all of which challenge the competency of the evidence presented to the commission. The only relevant evidence presented to the commission was Agilar’s stipulation to positive findings of dermor-phin in Bad John’s and LaPile Creek’s systems.
Assignment 7 argues that the trial court erred in finding that the commission fulfilled its mandate to allow Agilar to choose from a list of referee laboratories to conduct a split sample test. The requirement is found in La.Admin.Code tit. 35, § | J.1775. It provides in pertinent part, “The commission shall provide a list of referee laboratories which must be able to demonstrate competency for that drug or substance at the estimated concentration reported by the primary laboratory, from which a trainer must select one.” The commission has been authorized to choose referee laboratories. In determining which laboratories to include, the commission must have discretion. If only one laboratory is deemed competent to referee samples, or if only one laboratory agrees to act as a referee laboratory, that certainly cannot invalidate the procedure. The testing must take place. We reject Agi-lar’s assignment of error 7.
Any discussion of Agilar’s assignment of error 12 is also obviated.
By assignment of error 13, Agilar challenges a commission rule requiring that the evidence he wished to introduce be certified or notarized before it is admitted. Agilar failed to brief this issue in violation of Uniform Rules—Courts of Appeal, Rule 1-3. Furthermore, Agilar failed to identify any evidence that he wanted to introduce and was not allowed to, or that he attempted to introduce at the adjudication hearing and was not allowed to. No such attempt was made on the record.
CONCLUSION
Under the racing regulations and statutes, substances not permitted are prohibited. Dermorphin is not permitted. The trainer, as the “absolute insurer” of the *1035 condition of Ms horse, bears responsibility for any prohibited substances detected.
The decision of the trial court is affirmed. All costs of this appeal are taxed to appellant, Anthony C. Agilar.
AFFIRMED.

. "Bleeders” are horses that have suffered exercise-induced pulmonary hemorrhaging. La.Admin.Code tit. 35, § 1.1507.