STEWART HAYNES *v.* G. A. BREAUX et al.—MRS. J. BUNDY et al., Warrantors.

It is essential to the perfection of a sheriff's sale that the purchaser should substantially comply with the terms of acjudication, which is the condition upon which the property is to be his. The price must be paid or the proper sureties offered when the sale has been made on a credit, otherwise the sheriff shall expose to sale anew the thing seized and adjudge it to another person. Therefore, every sale upon execution, which is not completed by the payment of the price to the Sheriff, is null.

Where a creditor enters satisfaction upon the execution to the amount of the bid, at the time of the adjudication, it might be regarded as a waiver of the right to insist upon payment in currency to the Sheriff.

APPEAL from the District Court of the Parish of Jefferson, *Burthe,* J. *T. A. Bartlett,* for plaintiff.    G. A. *Breaux, Durant & Hornor, J. D. Mayes* and *J. H. VanDolson,* for defendants and appellees.

MERRICK, C. J.   This is a petitory action.   Both parties claim through *Joseph Ross Purdon.*—The defendants in virtue of a sheriff's sale made in August 1842, and the plaintiff by virtue of an act signed by *Purdon* dated in October 1858, and confirmed by a notarial act in January 1859.   The case turns entirely upon the question whether an adjudication at a sheriff's sale without the payment of the price by the purchaser divests the debtor of his property where the sheriff refuses to execute a deed to the purchaser.

The facts which give rise to this question are in substance as follows :

On the 19th day of May 1836, *James Ogilvie* sold the property in controversy, a square of ground, by public act passed before *William Y. Lewis,* a notary public, of New Orleans, to *Joseph Ross Purdon,* with another square, No. 28, for the price of $3,480.   On the 28th of June 1842, the vendor, *Ogilvie,* commenced suit against the vendee *Purdon,* for a portion of the price, and obtained executory process against him, for the sale of the two squares of ground sold.   Notice of the order of seizure and sale was served July 2, 1842.   The property was appraised for the sheriff's sale, on the 19th August 1842, both plaintiff and defendant appointing appraisers, and it would seem from the deed, which was prepared, but not signed by the sheriff, that the whole property was bid off by *Josette Bundy* for the price of $335, which she refused or neglected to pay to the sheriff.

The order of seizure and sale with the sheriff's return thereon is lost, but this portion of the record is sought to be supplied by the testimony of the sheriff. In his deposition he says : " In 1842 or '43, certain property was seized at the suit of *James Ogilvie* v. *Joseph Ross Purdon,* of the docket of that, (the District) Court, and adjudicated to the last bidder, who was *Lewis* or *Josette Bundy.*   I

cannot tell the price. The conditions of the sale were never complied with. The title was prepared and is now in the possession of *T. J. Durant, Esq.*, but was never signed, and thus the sale was never completed. The date of the sale and the price can be obtained from the records of the Fifth District Court of New Orleans, where I testified two or three weeks ago."

It does not appear that *Mrs. Bundy* ever went into possession of the property, but in May 1854, about twelve years afterwards, she sold the same to *Mrs. Van Dalson*, for $4000, *John Green* intervening in the act and guaranteeing the title. The record also contains an order from *Ogilvie* purporting to bear date 17th June, 1853, long after the sheriff's office had expired, directing him, the sheriff, to pay *Green* the proceeds of the sale made August 1842. *Green* had paid the taxes from 1848 to 1852, amounting to 18 or $20. But *Green* was not owner of the property when he paid the taxes ; hence nothing can be inferred from this fact favorable to defendants' title. Neither can the order of *Ogilvie* on the sheriff, nine years after the fruitless sheriff's sale, for funds which were never in his, the sheriff's hands, have any effect on the question of title, for the property offered for sale was *Purdon's* and not *Ogilvie's*, and if the mere knocking off of the property at the sheriff's sale to *Mrs. Bundy*, did not invest her with title, the plaintiff must recover.

It ought also to be stated that in Feb. 1859, after the commencement of this suit, a rule was taken upon the ex-sheriff, *Garcia*, to show cause why he should not make a deed to *Mrs. Bundy*. The rule was discharged upon his showing that she had failed to comply with the terms of the sale, and pay the price. On the question of law previously stated, arising from the foregoing facts, we are of opinion that it is essential to the perfection of a sheriff's sale, that the purchaser should substantially comply with the terms of adjudication, which is the condition upon which the property is to be his. The Code of Practice says, " If the person to whom the property has been adjudicated shall refuse to pay to the sheriff the price of the adjudication, or to offer the proper sureties when the sale has been made on a credit, the sheriff shall expose to sale anew, the thing seized, and adjudge it to another person, Art. 689. This article, therefore, in effect, declares the nullity of every adjudication at sheriff's sale upon execution which is not completed by the payment of the price to the sheriff. See 3 L. R. 475, 7 Rob. 416 ; 10 Rob. 90; 2 An. 361 ; 13 An. 333. Those cases where the creditor at the time of the adjudication entered satisfaction upon the execution to the amount of the bid, are not in conflict with the preceding decisions, for such consent of the creditor at the time of the sale might be regarded as a waiver of the right to insist upon payment in lawful currency to the sheriff. See 8 Rob 450, 1 N. S. 173. And the last cited cases have no analogy with the case at bar, in which the amount of the bid has neither been paid nor credited on the order of seizure and sale to this day, notwithstanding the idle ceremony resorted to nine years afterwards by *Ogilvie* and *Green* in the order on the sheriff for the proceeds of the pretended sheriff's sale.

The questions arising upon the demands in warranty have not been discussed before this court, and we shall remand that portion of the case for a new trial.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged and decreed, that the plaintiff recover and have judgment against the defendants for the said square of ground described in the plaintiff's petition, and that a writ of possession issue accordingly ; and it is further ordered, that this case be remanded

to the lower court for a new trial upon the demands in warranty, the defendants paying the costs of the lower court, and the defendants and warrantors the costs of the appeal.

---

### SAME CASE—ON A RE-HEARING.

A re-hearing has been granted on the questions arising on the demands in warranty.

On a re-examination of the case, it appears that the defendants, *G. A. Breaux* and *Samuel Sumner*, are entitled to recover against their immediate warrantor; the succession of *Mrs. VanDalson*, and in virtue of the subrogation, also, against *Green* and *Mrs. Bundy*.

It is, therefore, ordered, adjudged and decreed by the court, that so much of our former judgment as remanded this case to the lower court for a new trial, and as relates to the costs of the lower court, be set aside, and it is further ordered, adjudged and decreed by the court, that said *Breaux* and *Sumner* do recover and have judgment against the succession of *Mrs. Margaret Helen VanDalson*, represented by *J. H. VanDalson*, administrator, for the sum of $1226 20, with five per cent. interest thereon from this date, to be paid in due course of administration, and that in virtue of their subrogation they have judgment against *Mrs. Josette Bundy* and *John Green*, as security for the sum of two hundred and thirty-five dollars and twenty cents, part of the same sum with like interest from the same date ; and it is further ordered, adjudged and decreed, that said succession of *Margaret Helen VanDalson* do have and recover judgment over in warranty against the said *Josette Bundy* as principal, and *John Green* as surety, for the sum of five hundred and thirty-five dollars and twenty cents, with legal interest thereon from this date, subject to a credit of so much of said sum of $235 20, and interest, as shall be paid to said *Breaux* and *Sumner* on the judgment in their favor ; and it is further ordered, that said seven remaining notes for seventy dollars each, and interest at six per cent., given by said *Margaret Helen VanDalson*, deceased, to said *Josette Bundy*, and assumed by said *Breaux* and *Sumner*, be declared cancelled, if in the possession of the said *Mrs. Bundy*, and in the event the administrator of said succession of *Mrs. M. H. VanDalson* or said *Breaux* and *Sumner* should be compelled to pay said promissory notes, or any of them, then their rights of a further recovery against said *Josette Bundy* and *John Green*, for so much as they may thus be compelled to pay, be reserved them ; and it is further ordered, that said defendants and parties cited in warranty, pay the costs, and, in the event of payment of the same by the defendants, they recover the same from said succession of *M. H. VanDalson*, to be paid in due course of administration and from said *Green* and *Bundy*, and in the event of payment by the said succession it is ordered that the latter have judgment over against said *Bundy*, as principal, and *Green* as surety for the same ; and it is ordered that the residue of our former judgment remain undisturbed.