156 So.2d 444

**PLACID OIL COMPANY et al.**

**v.**

**A. M. DUPONT CORPORATION et al.**

**No. 46554.**

June 28, 1963.

Rehearing Denied Oct. 9, 1963.

Claude B. Duval, Duval, Arceneaux & Lewis, Houma, H. H. Hillyer, Jr., Milling, Saal, Saunders, Benson & Woodward, New Orleans, Charles C. Crady, III, Houston, Tex., for relator.

Armand A. Gutierrez, George Conger, Shreveport, Watkins & Talbot, Houma, for appearers.

Ellender, Wright & Wurzlow, Houma, for respondents-appellees.

SANDERS, Justice.

This is a concursus proceeding. The petitioners, Placid Oil Company and Arkansas Fuel Oil Corporation,[1] owners of certain mineral leases, have deposited the production royalties in the registry of the court for a judicial determination as to which of their lessors is entitled to these royalties. Impleaded are the adverse claimants, A. M. Dupont Corporation and J. C. Dupont, Inc., on the one hand, and Royalty Properties, Inc., on the other.

The mineral leases from the claimants purport to cover the following described mineral-producing land:

"A certain tract of land situated in the Parish of Terrebonne, Louisiana, comprised in Section 77, Township 20 South, Range 18 East, measuring one-half (½) arpent front on the right descending bank of the Bayou Little Caillou by depth of survey and bounded now or formerly as follows: Above or North and Below or South by property of Royalty Properties. Said tract of land comprising the upper one-half (½) of Lot 42 of the Pierre Daspit Subdivision."

The two Dupont corporations assert their lease rights based upon the ownership by each corporation of an undivided one-half interest in the above described property. They deraign their titles by recorded instruments from the former owner, Auguste Benoit. On May 18, 1912, at the instance of A. M. & J. C. Dupont, Ltd., a Louisiana corporation and judgment creditor of Benoit, the property was sold under a writ of fieri facias at sheriff's sale. A. M. & J. C. Dupont became the purchasers at the sale. Subsequently, A. M. Dupont Corporation acquired the interest of A. M. Dupont, and

1. Now Cities Service Oil Company.

J. C. Dupont, Ltd., acquired the interest of J. C. Dupont.

Royalty Properties, Inc., filed an answer asserting the validity of its lease and entitlement to the funds based upon the ownership of the property. It likewise traces its title by duly recorded instruments from Auguste Benoit: an Act of Sale, dated March 4, 1913, from Auguste Benoit to Ross Sterling and, then, by an Act of Sale, dated August 2, 1938, from Ross Sterling to it. Royalty asserts that the 1912 sheriff's sale (a necessary link in the chain of title of the Dupont corporations) is an absolute nullity on the ground that A. M. Dupont and J. C. Dupont, third party adjudicatees at the sale, did not pay the price of the adjudication into the hands of the sheriff as required by law and by the order of court.

To sustain the sheriff's sale the Dupont corporations assert that the price of the adjudication was in fact paid direct to the judgment creditor as evidenced by the cancellation of the judgment on April 11, 1913. Hence, the irregularity, if any, is not an actual failure to pay the price but only a failure to pay it in a specific manner. They plead the prescription of two years applicable to informalities in sheriff's sales under Article 3543 of the LSA–Civil Code.

The case was submitted on a stipulation of fact, to which was attached all documents pertaining to the contested sheriff's sale. The stipulation also contained the following reference to the adjudication:

"a) That on May 18, 1912, the Sheriff of Terrebonne Parish, Louisiana, acting under a writ of Fieri Facias emanating from the 20th Judicial District Court (now the 17th Judicial District Court) Terrebonne Parish, Louisiana, adjudicated said property at public auction to A. M. & J. C. Dupont, as the highest bidders, as shown by proces verbal of sale of record in COB 61 folio 172 of the conveyance records of Terrebonne Parish, Louisiana, annexed hereto as Exhibit A previously referred to."

The stipulation embodied no statement of possession of the property. Neither party offered any independent evidence of possession.

The district court, in accordance with the stipulation, found that the sheriff's sale was to A. M. Dupont and J. C. Dupont, individually. While the court found that the price had not been paid into the hands of the sheriff, it nonetheless concluded that the sheriff's sale was valid. The court upheld the claim of the Dupont corporations.

On appeal, the Court of Appeal determined that the adjudication at the sheriff's sale was to A. M. & J. C. Dupont, Ltd., a corporation not a party to this proceeding. Holding that neither of the instant claimants had a "valid record title" to the property, the court dismissed the concursus proceeding.

Upon application of Royalty Properties, Inc., we granted certiorari to review the judgment of the Court of Appeal, 243 La. 1019, 149 So.2d 768.

 We cannot agree with the holding of the Court of Appeal. The court's finding that the adjudicatee at the 1912 sheriff's sale was the corporation, A. M. & J. C. Dupont, Ltd., is contrary to the stipulation of the parties, by which the court is bound.[2] Moreover, the judgment does not comply with 3654, LSA–Code of Civil Procedure, which requires that the court render judgment in favor of the party who had proved "better title." [3]

 Hence, we proceed to a resolution of the crucial issue in the case the validity, *vel non*, of the judicial sale of May 18, 1912. If that sale is valid, the Dupont corporations hold the better title to the leased property. On the other hand, if it is null, Royalty Properties, Inc., holds the better title.

We find from the stipulation of the parties, as did the district court, that the individuals, A. M. Dupont and J. C. Dupont, became the purchasers at the 1912 sheriff's sale. Thus, the property was adjudicated to third parties rather than the seizing creditor, A. M. & J. C. Dupont, Ltd.

The record is clear that the adjudicatees did not pay the price into the hands of the sheriff despite the fact the sale was ordered and advertised for cash. The sheriff's sale recites that the adjudication was for the price of Two hundred Dollars, of which the purchasers paid only the sum of $36.90 into the hands of the sheriff to defray the costs. The purchasers "retained in their hands" the balance of $163.10 to be devoted, first, to the payment of a special mortgage in favor of Joseph Cuneo, Jr., showing a maximum liability in principal, interest and attorney's fees of $61.53 and, next, to the payment of the judicial mortgage in favor of A. M. Dupont & J. C. Dupont, Ltd., on which the writ was based. No part of the sum allocable to the satisfaction of the judgment was paid to the sheriff.

The record reflects that the special mortgage in favor of Joseph Cuneo, Jr., was paid and cancelled on August 16, 1912.

2. See Succession of Kamlade, 232 La. 275, 94 So.2d 257; Fenerty v. Culotta, 228 La. 649, 83 So.2d 888; Wickliffe v. Cooper and Sperrier, 161 La. 417, 108 So. 791.

3. Art. 3654: "When the issue of ownership of immovable property or of a real right is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right is so presented, the court shall render judgment in favor of the party:

"(1) Who would be entitled to the possession of the immovable property or real right in a possessory action, unless the adverse party makes out his title thereto; or

"(2) Who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action."

The judgment in favor of the seizing creditor, A. M. & J. C. Dupont, Ltd., was in excess of the net proceeds of the sale. The record reflects, however, that this judgment was cancelled on April 11, 1913.

The Dupont corporations strenuously urge that payment was actually made by the purchasers because the judicial mortgage which gave rise to the sheriff's sale was subsequently cancelled. We must reject this contention. The cancellation occurred eleven months after the judicial sale. Furthermore, the record does not establish that the cancellation resulted from a payment by the adjudicatees.

Article 679 of the Louisiana Code of Practice of 1870,[4] the pertinent law in effect at the time of the judicial sale, required a third party purchaser to pay into the hands of the sheriff that portion of the price of adjudication that exceeded the privileges and special mortgages.[5]

This Article was mandatory. Failure to comply with its provisions and pay the price of the adjudication into the hands of the sheriff rendered the judicial sale absolutely null. No title passed to the adjudicatees.[6]

The Dupont corporations strenuously urge, however, that the prescription of two years under Article 3543 of the Louisiana Civil Code is applicable. This Article provides:

"That any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon

---

4. "When there exists a mortgage or privilege on the property put up for sale, the sheriff shall give notice, before he commences the crying, that the property is sold subject to all privileges and hypothecations of whatsoever kind they may be, with which the same is burdened, and with the condition that the purchaser shall pay in his hands whatever portion of the price for which the property shall be adjudicated, which may exceed the amount of the privileges and special mortgages to which such property is subject."

5. See also Art. 689 of the Code of Practice of 1870, which required a new sale if the bid was not paid.

6. Articles 679, 689, Louisiana Code of Practice of 1870; Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582; In re Union Central Life Insurance Company, 208 La. 253, 23 So.2d 63; Frierson v. New York Life Ins. Co., 174 La. 1037, 142 So. 256; Capital Bldg. & Loan Association v. Northern Ins. Co., 166 La. 179, 116 So. 843; Roussell v. Hughes, 159 La. 864, 106 So. 332; Haynes v. Breaux, 16 La. Ann. 142. See also Lapene v. Badeaux, 36 La.Ann. 194.

shall accrue after five years from the date of public adjudication thereof." [7]

The prescription announced by this codal article is appropriate only to informalities, or relative nullities. It has no pertinence to a failure to pay the price of adjudication in a judicial sale. Payment of the price is of the essence of the judicial sale. As we have seen, the failure to pay transforms the sale into an absolute nullity.[8]

The Dupont corporations argue that if any irregularity appears in the judicial sale, it is at most a failure to pay the price in a specific manner, that is through the sheriff. Such an irregularity, it is suggested, is an informality curable by prescription. We are unable to agree with the factual basis of this contention. We find no evidence of the payment of the price to anyone prior to the recorded conveyance of the property on March 4, 1913, by Auguste Benoit to Ross Sterling, the immediate ancestor in title of Royalty Properties, Inc. The judgment was then outstanding and uncancelled. Moreover, we have found nothing in the record to establish that the cancellation of the judgment, which occurred thereafter on April 11, 1913, resulted from payment of the price by the adjudicatees.

In concluding that the judicial sale was valid, the district court relied upon Prudential Ins. Co. of America v. Flournoy, 199 La. 786, 7 So.2d 58 and Southern Coal Co. v. Thibodaux & Chauvin, La.App., 181 So. 80. We find these decisions to be inapplicable.

The Prudential Insurance Co. of America case did not involve the validity of the sheriff's sale, but rather the computation of the sheriff's fees on the adjudication. Unlike the instant case, however, the purchaser at the sheriff's sale was the judgment creditor. Accordingly, the amount of his bid was credited on his judgment and writ. The fact that the seizing creditor did not actually hand to the sheriff the amount of the bid in cash did not, the court held, preclude the assessment of sheriff's fees thereon.

The sole question in the Southern Coal Company case, as stated by the court, was the legality of the summary procedure (a rule to show cause) to redistribute the price of the adjudication after the funds from the judicial sale had been disbursed and the writ returned satisfied.

We conclude from the record that Royalty Properties, Inc., has the better title to the

---

7. As amended by Act. No. 231 of 1932. The only material change made by the 1932 amendment was the reduction of the prescriptive period from five years to two years with respect to persons of the full age of majority. The Article has since been amended by Act. No. 407 of 1960.

8. Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582; In re Union Central Life Ins. Co., 208 La. 253, 23 So.2d 63; Phoenix Building & Homestead Assn. v. Meraux, 189 La. 819, 180 So. 648; Thibodeaux v. Thibodeaux, 112 La. 906, 36 So. 800; 13 Tulane Law Review 615–621.

leased property and is entitled to the funds on deposit in the registry of the court.

For the reasons assigned, the judgment of the Court of Appeal is reversed and judgment is rendered in favor of Royal Properties, Inc., decreeing it to be owner of the funds deposited by petitioners in the Registry of the 17th Judicial District Court for the Parish of Terrebonne. It is further ordered that the Clerk of Court deliver said funds to Royal Properties, Inc. All costs of this proceeding are assessed against the adverse claimants in equal proportions, one-half to be paid by Royalty Properties, Inc. and one-half to be paid by A. M. Dupont Corporation and J. C. Dupont, Inc.

Rehearing denied.

McCALEB, J., dissenting.

156 So.2d 448