DOMENGEAUX, Judge.
Defendants, Herman A. Christian and Gennell S. Christian, appeal a judgment ordering them to pay damages and to perform all obligations incurred under a contract to sell immovable property.
On August 31, 1984, defendants offered to buy plaintiff's lot and home located at 5014 Camp Street in the City of Lake Charles for a specified price. Plaintiff, Judith F. Carpenter, accepted the offer on September 3, 1984. Under the contract, the parties agreed to complete the sale on or before September 22, 1984. After defendants failed to complete the sale as provided for, plaintiff brought suit seeking specific performance of the agreement and damages. Defendants answered, alleging that the elevation of the lowest habitable floor of the house is below federally prescribed standards, thus rendering the home flood prone. Defendants argued that the flood prone condition of the home creates an error in the principal cause for the agreement, giving rise to a vice of consent, warranting a rescission of the agreement. The parties submitted the case to the trial court through a joint stipulation of facts and issues, with exhibits. The trial court *1366 rendered judgment for plaintiff. We affirm.
The defendants assign as error the trial court’s finding (1) that the elevation of the lowest habitable floor of the house was 15.925 feet; and (2) that there was no vice of consent warranting rescission of the agreement to sell on the ground that the defendants were in error with respect to a principal cause of the agreement.
The facts, as stipulated by the parties, show that the Camp Street house was built in 1980. At the time of construction, the City of Lake Charles issued a certificate indicating the house’s compliance with Flood Plane Administration requirements. The certificate, which was introduced into evidence, indicates that the house is located in an A-2 flood zone, that the base flood elevation is 16 feet and that the elevation of the residence’s lowest habitable floor, at the time the certificate was issued, was a minimum of 16 feet. After plaintiff filed suit, three separate elevation surveys were made. The Meyer & Associates survey indicates that the elevation of the lowest habitable floor is 15.15 feet, based on a reference elevation of 15.925 feet, designated as the National Geodetic Vertical Datum (N.G.V.D.) 1983. The Todd survey found that the elevation of the lowest habitable floor is 16.24 feet, based on a reference elevation of 16.670 feet, designated as N.G. V.D. (1929). The third survey, performed by James H. Knapp, R.L.S., found the elevation of the lowest habitable floor to be 16.190 feet, based on N.G.V.D. (1929), and 15.445 feet, based on N.G.V.D. (1983).
In his report, Mr. Knapp explained that in 1971 the United States Coast and Geodetic Survey (U.S.C. & G.) published the elevation of the U.S.C. & G. control monument port as being 16.670 feet mean sea level (MSL). The control monument port is a reference elevation from which other elevations can be measured. Mr. Knapp’s report further indicates that in 1982 the U.S.C. & G. reevaluated the control monument’s elevation, and subsequently readjusted it to a value of 15.925 feet MSL. This elevation is referred to as N.G.V.D. (1983). Mr. Knapp’s report also indicates that the Federal Emergency Management Agency, in requiring a lowest habitable floor elevation of 16 feet on July 5, 1984, indicated that the reference datum to be used is from the 1971 published data.
Defendants’ first assignment of error is directed to the trial court’s finding that the elevation of the lowest habitable floor is 15.925 feet. Defendants claim that the stipulated facts and exhibits show that the trial court confused the elevation of the control monument port with that of the lowest habitable floor. Under Placid Oil Co. v. A.M. Dupont Corp., 244 La. 1075, 156 So.2d 444 (1963), they argue, the trial court is bound by the parties’ stipulation of facts and its failure to use the stipulated facts in reaching its decision is reversible error.
A review of the written stipulation of facts, exhibits, and written reasons for judgment reveals that the trial court did confuse the elevation of the lowest habitable floor with that of the control monument port. The Meyer and Knapp surveys put the elevation of the lowest habitable floor at 15.15 feet and 15.445 feet, respectively, based on the N.G.V.D. (1983) of 15.925 feet. In referring to the lowest habitable floor's elevation, as measured from the N.G.V.D. (1983), the trial court should have used one of these values, and not the elevation of the control monument port, N.G. V.D. (1983). This error, however, is not grounds for a reversal under Placid Oil Company, supra. In Placid Oil the parties had stipulated that the purchasers of immovable property at a Sheriff’s sale were two individuals. The Court of Appeal, however, found to the contrary that the purchaser was a corporation. Since only the individuals were parties to the suit, the Court of Appeal dismissed the proceeding. The Supreme Court reversed, stating that the Court of Appeal’s factual finding “is contrary to the stipulation of the parties, by which the Court is bound.” 156 So.2d at 446.
In Placid Oil, the Court of Appeal’s finding of fact was material and necessitat *1367 ed a judgment inconsistent with the stipulated facts. In this case, the trial court’s error does not necessarily lead to a judgment that is inconsistent with the stipulated facts. In arguing that an error in the principal cause of the agreement created a vice of consent, defendants have maintained that the basis for the error is the alleged failure of the house to meet federal flood protection standards. The defendants have argued that the house is flood prone because the elevation of the lowest habitable floor is below 16 feet. The defendants have not argued, nor offered any evidence showing, that an elevation of 15.-445 feet makes the house flood prone, but that the 15.925 feet elevation does not. Since defendants assert that all elevations below 16 feet create the flood prone condition and since the trial court used an elevation below 16 feet in its reasons for judgment, the trial court’s error is not a basis for reversing the judgment.
The defendants’ second assignment of error is with respect to the trial court’s finding that there was no error in the principal cause of the agreement and that, therefore, there was no vice of consent warranting a rescission of the sale.
Defendants argue that federal flood protection standards require a minimum elevation of sixteen feet for the lowest habitable floor. They allege that, based on the 1983 adjustment of the U.S.C. & G. control monument port, the elevation of the Camp Street house’s lowest habitable floor is 15.-445 feet. Defendants further argue that at this elevation the Camp Street house does not meet federal standards and that it is, therefore, flood prone.
The first question which must be answered, then, is whether the present elevation of the lowest habitable floor of the Camp Street house violates federal flood protection standards. This requires a determination of what federal reference standard is used for determining flood elevations.
The Knapp elevation report states that the Camp Street property is in flood zone A-2 with a required first habitable floor elevation of 16 feet as found on Federal Emergency Management Agency (F.E. M.A.) Community Panel No. 220040-0010C, dated July 5, 1984. The Knapp report also notes that in this document and others relating to the City of Lake Charles, the F.E.M.A. states that the reference elevation used is from the 1971 data. In other words, the 16 feet minimum elevation requirement of the lowest habitable level was determined with reference to the N.G.V.D. (1929) elevation of 16.670 feet. Since this flood elevation standard is set with reference to N.G.V.D. (1929), it is logical to expect compliance to be determined with reference to N.G.V.D. (1929). Therefore, defendants’ reliance on an elevation based on the revised N.G.V.D. (1983) of 15.925 feet is not appropriate for determining compliance with federal flood protection standards. The elevation should be determined with reference to the N.G.V.D. (1929) value of 16.670 feet.
Two elevation reports based on the N.G.V.D. (1929) were submitted to the trial court as joint exhibits. The Todd survey found the elevation of the lowest habitable floor to be 16.24 feet and the Knapp survey found the elevation to be 16.190 feet. On the basis of this evidence, the Camp Street house does meet federal flood protection standards. Therefore, there was no error in the principal cause for entering the agreement based on the assertion that the elevation of the lowest habitable floor did not meet federal flood protection standards.
Even though the Camp Street house does meet federal flood protection standards, there could be error as to the principal cause of the agreement if the principal cause of the agreement included obtaining a house that had a minimum lowest habitable elevation of 16 feet, based on the N.G. V.D. (1983), or if the principal cause included obtaining a non-flood prone residence.
Under C.C. Art. 1823 (1870)[1] error in some point, which was a principal cause *1368 of the agreement, is sufficient to invalidate the contract. Under C.C. Art. 1825 (1870)[2] the principal cause is called the motive and means that consideration without which the contract would not have been made. C.C. Art. 1896 (1870)[3] states that a contract is without a cause when a party was in error, believing that his inducement for contracting exists when in fact it does not exist. However, C.C. Art. 1826 (1870)[4] and our jurisprudence condition these articles by providing that a contract may be invalidated for unilateral error as to a fact which was the principal cause for making the contract only when the other party knew or should have known it was the principal cause. Scoggin v. Bagley, 368 So.2d 763 (La.App. 2nd Cir.1979); Security National Bank of Shreveport v. Terrell, 459 So.2d 131 (La.App. 2nd Cir.1984).
In this case, the defendants did not present any evidence which would support a finding that the plaintiff knew that the defendants’ principal cause for making the agreement included obtaining a home with an elevation of the lowest habitable floor of 16 feet as measured with respect to the N.G.V.D. (1983). Nor can it be presumed from the nature of the transaction that plaintiff knew that this was the principal cause of the agreement. Therefore, the contract cannot be invalidated on this basis.
On the other hand, it can be presumed that the principal cause for defendants making the agreement included their desire to obtain a home that was not flood prone. From the nature of the transaction it can be presumed that plaintiff knew, or should have known, that defendants’ principal cause for entering into the agreement was to obtain a house suitable for residential use. The joint stipulation of facts show that the defendants intended to buy the property as their new home. It can be concluded that a house which is unreasonably susceptible to flooding is not suitable for residential use and a person entering into a contract to purchase such a house would be in error with respect to the principal cause of the agreement.' However, whether a house is unreasonably susceptible to flooding is a factual question dependent on a number of circumstances.
In the present case defendants have not produced any evidence from which it can be concluded that the Camp Street house is unreasonably susceptible to flooding. There is no evidence of any prior flooding or of an inability to obtain flood insurance or of any present circumstances which indicate a reasonable belief future flooding is likely. In other words, defendants failed to prove that the Camp Street house is flood prone. Therefore, the trial court did not err in finding that there was not an error in the principal cause for entering the agreement, creating a vice of consent warranting a rescission of the contract.
For the above and foregoing reasons the decision of the district court is affirmed.
All costs of this appeal are to be assessed to the defendants-appellants.
AFFIRMED.

. C.C. Art. 1823 (1870). Errors may exist as to all the circumstances and facts which relate to a *1368 contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.

.C.C. Art. 1825 (1870). The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.

. C.C. Art. 1896 (1870). By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made.

. C.C. Art. 1826 (1870). No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.