979 So.2d 539 (2008)
Joseph BOXIE
v.
Holly E. SMITH-RUFFIN, Enterprise Leasing Company of New Orleans, and Legion Insurance Company
Joseph Daniel Patt
v.
Holly E. Smith-Ruffin, Enterprise Leasing Company of New Orleans, and Legion Insurance Company.
Nos. 07-CA-264, 07-CA-265.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
*542 Gerald C. deLaunay Perrin, Landry, deLaunay, Dartez & Ouellet, Lafayette, Louisiana, for Plaintiff/Appellant.
Donna Bramlett Wood, Lynda A. Tafaro, Attorneys at Law, Metairie, Louisiana and Loren C. Marino, Harold E. Molaison, Attorneys at Law, New Orleans, Louisiana, for Defendants/Appellees.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
Plaintiffs, Joseph Boxie ("Boxie")and Joseph Daniel Patt ("Patt") were involved in a four car accident on I-10 Eastbound in Kenner, LA on March 13, 2000. Boxie and Patt were both passengers in a truck driven by Joseph Rossyion ("Rossyion"). The truck was pulling a horse trailer with two horses traveling to the Fairgrounds race track. Rossyion had to stop suddenly because of traffic and was forced to pull the truck onto the shoulder of the road. *543 The horse trailer stayed in the lane of traffic.
According to a pre-trial stipulation entered into by the parties, a vehicle driven by Holly Smith-Ruffin ("Smith-Ruffin") struck the rear of a vehicle being driven by her co-employee Darla Dillon ("Dillon"), which then struck a vehicle driven by Debra Tamplain ("Tamplain"), which in turn struck the rear of the horse trailer connected to the truck being driven by Rossyion.
The testimonies at trial indicate there was a dispute regarding whether the Tamplain and Rossyion vehicles were struck once or twice. According to the trial testimony of Tamplain, the vehicle being operated by Dillon struck her vehicle and she struck the horse trailer, then the Smith-Ruffin vehicle hit Dillon and Dillon struck her vehicle again, causing her to strike the horse trailer for a second time. Rossyion also testified that the car behind him hit the trailer, bounced off and he got hit again. He described feeling two jerks, with the first one being humongous and the second one simply shaking the trailer a little bit. Patt testified that he felt a second bump.
Smith-Ruffin and Dillon both testified that Smith-Ruffin hit Dillon, who hit Tamplain. Dillon testified that she could have stopped in time had she not been struck by Smith-Ruffin. Smith-Ruffin and Dillon's testimonies were consistent with the pre-trial stipulation.
Dillon and Smith-Ruffin were both employed as drivers for Statewide Transport, Inc. At the time of the accident, both Dillon and Smith-Ruffin were working as drivers in the course and scope of their employment with Statewide Transport ("Statewide").
On November 6, 2000, Boxie filed a Petition for Damages naming Smith-Ruffin, Enterprise Leasing Co., and Legion Insurance Company as defendants. Patt filed a Petition for Damages on March 7, 2001, also naming Smith-Ruffin, Enterprise Leasing Co., and Legion Insurance Company as defendants. Boxie and Patt's lawsuits were consolidated by Consent Judgment on October 12, 2001.
On June 15, 2004, Plaintiffs filed a First Supplemental and Amending Petition adding Louisiana Insurance Guaranty Association ("LIGA") as a defendant. Legion Insurance Company had been declared insolvent and LIGA was the responsible party for any losses claimed under the Legion insurance policy issued to Statewide. Plaintiffs then filed a Second Supplemental and Amending Petition on December 2, 2004, asserting that Statewide Transport was the lessee of the vehicle owned by Enterprise Leasing and being driven by Smith-Ruffin at the time of the accident.
Boxie & Patt filed a Third Supplemental and Amending Petition claiming the accident was caused by the negligence of Smith-Ruffin and Dillon and both were in the course and scope of their employment with Statewide at the time of the accident and Statewide was the lessee of both vehicles. The petition also alleged that the vehicle driven by Dillon was insured by Legion and LIGA was, therefore, responsible. Dillon was not named as a defendant in this petition.
This matter went to trial on July 10, 2006. Following a bench trial, the trial court took the matter under advisement and rendered a Judgment with Reasons on September 1, 2006. The trial court rejected plaintiffs' request to reject the testimony regarding "two bumps" because of the pre-trial stipulation, supporting only one impact to the Rossyion vehicle, entered into by the parties as part of a pre-trial order. The trial court ultimately found *544 that two impacts had occurred. The trial court found that plaintiffs were free from fault in the cause of the accident and the injuries they sustained. The trial court noted that Boxie and Patt's medical records are very similar. Boxie complained of neck and back pain and Patt complained of back pain and disc problems. Both plaintiffs complained of erectile dysfunction and both suggested they needed possible surgery in the future, although there had been no surgery since 2000.
The trial court found that the evidence presented supported soft tissue injuries of a non-permanent debilitating nature for both plaintiffs. Patt argued that he couldn't sit for a long period of time, but the trial court observed him sit in the courtroom for one and a half hours after he testified, without standing or leaving the courtroom to exercise.
The trial court further found the erectile dysfunction for both plaintiffs was not caused by this accident and found that the plaintiffs' conditions were exaggerated. Therefore, the trial court found that much of the medical expenses incurred were not needed and/or resulted from circumstances unrelated to the accident. The court also found that neither plaintiff will require surgical procedures in the future.
Regarding fault, the trial court found that Dillon had contributed to the losses of plaintiffs. The court found there is no evidence to indicate which impact resulted in greater injury to the plaintiffs. Therefore, the court assessed equal percentages of fault against Dillon and Smith-Ruffin. They were both assessed with 50% fault. Since Dillon was not a party to the lawsuit, the trial court ordered that the plaintiffs' recovery from defendants be reduced by 50%.
The trial court awarded Boxie $50,000.00, including $40,000.00 for pain and suffering and $10,000.00 for medical expenses. Patt was awarded $37,000.00, including $30,000.00 for pain and suffering and $7,000.00 for medical expenses.
Plaintiffs filed a Motion to Fix and Tax Costs on October 25, 2006 seeking expert witness fees and deposition costs. A hearing was held on December 18, 2006 and the trial court awarded plaintiffs fifty percent of the expert witness fees and deposition costs they sought.

DISCUSSION
Plaintiffs have now filed this appeal of the trial court's judgment. They assert eight assignments of error. First, they argue the trial court erred in failing to give effect to the stipulation made among the parties in this case. Second, plaintiffs argue the trial court erred in concluding that Dillon was 50% at fault in causing the accident. Third, plaintiffs argue the trial court erred in failing to find that State Transport, as Dillon's employer, was vicariously responsible for any fault attributed to her in this accident. Fourth, plaintiffs contend the trial court erred by failing to award plaintiffs all medical expenses incurred and by arbitrarily fixing the amount of recoverable medical expenses. Fifth, they argue the trial court erred in failing to award full and adequate general damages to plaintiffs. Next, plaintiffs argue the trial court failed to give appropriate weight to the diagnoses and opinions of the treating physicians. By their seventh assignment of error, plaintiffs argue the trial court failed to recognize and give effect to the presumption of medical causation. And finally, plaintiffs contend the trial court erred in failing to award plaintiffs the entirety of their trial deposition and expert witness expenses.
For the reasons which follow, we reverse the trial court's findings in part, amend the amount of damages awarded to *545 plaintiffs, and affirm the trial court's judgment in part.
The standard of appellate review of a trial court's factual findings is well settled and has long been established in this state. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Earls v. McDowell, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, citing Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La. 1993). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Earls, supra, citing, Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
An appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. Earls, supra, citing, Rogers v. City of Baton Rouge, 04-1001 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1104, writ denied, 05-2022 (La.2/3/06), 922 So.2d 1187. This Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. Earls, supra, citing, LSA-Const. Art. 5, section 10(B); Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742.
Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be proved is more probably than not. Earls, supra, citing, Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2nd Cir.1988). Uncontroverted evidence should be taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. Id.
By their assignment of error number one, plaintiffs argue the trial court erred in failing to give effect to the stipulation made by the parties in this case. We agree with the plaintiffs and find the trial court erred by disregarding plaintiffs' request to reject any testimony concerning "two bumps", due to the stipulation entered into by the parties in the Pre-Trial Order. Stipulation Number 10 in the Pretrial Order stated the following:
The accident complained of occurred when the vehicle driven by Holly E. Smith-Ruffin struck the rear of the vehicle driven by her co-employee, Darla Dillon, which in turn struck a vehicle being operated by Debra Tamplain, which in turn struck the rear of the horse trailer which was connected to Mr. Rossyion's vehicle, in which Plaintiffs were passengers.
The trial court ignored this stipulation and found that, according to the testimony by Rossyion, Patt, and Tamplain, two impacts occurred and the Rossyion vehicle was struck twice from the rear during this accident. We find the trial court erred by not acknowledging the stipulation that the parties entered into willingly before trial.
*546 A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. R.J. D'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983), citing Placid Oil Company v. A.M. Dupont Corporation, 244 La. 1075, 156 So.2d 444 (1963). Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. R.J. D'Hemecourt Petroleum, supra, citing Wickliffe v. Cooper and Sperrier, 161 La. 417, 108 So. 791 (1926). Such agreements are the law of the case. R.J. D'Hemecourt Petroleum, supra.
According to the stipulation, there was only one impact. The accident occurred because the Smith-Ruffin vehicle struck the Dillon vehicle, which started a chain of events ending with the Tamplain vehicle striking the Rossyion horse trailer.
By assignments of error number two and three, plaintiffs argue the trial court erred in concluding that Dillon was fifty percent at fault in causing the accident and in failing to find Statewide Transport, as Dillon's employer, vicariously liable for any fault attributed to her. Based on the stipulation, we find Dillon was not at fault in this accident and therefore, the trial court erred in finding her fifty percent at fault. Since we find Dillon was not at fault, Statewide Transport will not be vicariously responsible for any damages as her employer.
Further, we agree with the trial court's finding that plaintiffs were free from fault in the cause of the accident and have now held that Dillon was also free from fault. Thus, we find that Smith-Ruffin was solely at fault in causing this accident. We also find that Statewide Transport is vicariously liable as Smith-Ruffin's employer because she was in the course and scope of her employment at the time of the accident. Therefore, defendants Smith-Ruffin, Statewide, and LIGA, as insurer for Statewide, are responsible for the total damages awarded to plaintiffs.
By assignments of error numbers four, six, and seven plaintiffs argue the trial court erred by failing to award plaintiffs all of the medical expenses incurred by them in this matter, by failing to give appropriate weight to the diagnoses and opinions of the treating physicians, and by failing to recognize and give effect to the presumption of medical causation. The trial court found that the evidence only supported a finding that each plaintiff suffered soft tissue injuries of a non-permanent debilitating nature. The trial court found that much of the medical expenses incurred by plaintiffs were not needed or resulted from circumstances unrelated to the accident because the plaintiffs' conditions were exaggerated. Finally, the trial court found that neither plaintiff will require surgery in the future. Therefore, the trial court awarded Boxie only $10,000.00 in past medical expenses and Patt $7,000.00 in past medical expenses. The evidence presented by plaintiffs indicate that actual medical expenses incurred by Boxie totaled $37,064.03 and the actual medical expenses for Patt totaled $39,948.19.

Medical Evidence for Plaintiff Boxie
The medical evidence presented at trial shows that Boxie was first treated in the emergency room of St. Martin Hospital on March 16, 2000 with complaints of neck and back pain. He was prescribed medication and told to follow-up with a physician if needed. On March 28, 2000 he reported to Dr. Bryan LeBean, an internist, with complaints of neck pain and headaches. Boxie also had complaints of back pain at his April 25, 2000 visit with Dr. LeBean. Dr. LeBean proceeded with conservative treatment and ordered an MRI in July 2000. The MRI indicated *547 Boxie suffered a disc herniation at L3-4 and L5-S1. Dr. LeBean opined that Boxie was a candidate for surgery based on the multi-level lumbar disc herniations. However, Boxie did not have the surgery. Thereafter, he continued to be treated by Dr. LeBean for observation and medication management. Boxie treated with Dr. LeBean from March 2000 until November 2005. Dr. LeBean testified that he believed Boxie's back injury was related to the accident of March 2000.
Dr. LeBean also treated Boxie for impotence, which began several months after Dr. LeBean began treating Boxie. Dr. LeBean thought the impotence was consistent with the lower back injury, and since Boxie had no problems before the accident, Dr. LeBean related the impotence problem to the accident.
Dr. LeBean also treated Boxie for high blood pressure with medication. Dr. LeBean thought the need for the medication was related to the accident because Boxie was predisposed to high blood pressure and the stress of the accident aggravated his condition.
Dr. LeBean referred Boxie to Dr. David Jarrot, a neurosurgeon. Boxie was first seen by Dr. Jarrot on August 8, 2000. Dr. Jarrot diagnosed Boxie as suffering from central protrusions at L3-4, 4-5, L5-S1. On August 15, 2001, Dr. Jarrot referred Boxie to Dr. John Watermeier, an orthopedic surgeon, for surgical options.
Boxie first reported to Dr. Watermeier on August 23, 2001. Dr. Watermeier ordered an EMG nerve conduction study and prescribed pain medication. The EMG study revealed L-5 radiculopathy and Dr. Watermeier diagnosed Boxie with lumbar disc syndrome. In March 2002, Dr. Watermeier recommended an epidural steroid block and stated in his report that if no improvement, Boxie may be a candidate for surgical treatment. On April 2, 2002, Dr. Watermeier recommended surgery, including the IDET procedure. The surgery or IDET procedure was never performed. Dr. Watermeier testified that Boxie's disability from this injury is a 10-15% physical impairment with no activities requiring repetitive bending or stooping.
Defendants presented the testimony of Dr. David Aiken. Dr. Aiken never physically examined Boxie, but reviewed his records. Dr. Aiken believed Boxie suffered a small disc rupture at L5-S1, which could have been caused by the accident. Dr. Aiken did not think surgery was required and didn't think Boxie suffered from neurogenic impotence related to the accident. Dr. Aiken did believe it was reasonable to follow the treatment recommendations of his physicians regarding medications, physical therapy, and the injections.

Medical Evidence for Plaintiff Patt
Like Boxie, Patt reported to the emergency room of St. Martin Hospital on March 15, 2000. He had complaints of left hand pain and lower back pain. He was diagnosed with lumbar strain, given medication, and told to follow-up with his physician if needed. Patt reported to Dr. LeBean on March 28, 2000. Dr. LeBean prescribed conservative treatment, including medication and therapy. He ordered an MRI in July 2000, which showed herniated discs at two levels.
Dr. LeBean also diagnosed Patt with impotence and believed it was related to the accident because the problem didn't start until after the accident and the injury occurred in a location where the nerves control erectile dysfunction.
Dr. LeBean referred Patt to Dr. Jarrot, who diagnosed him with herniated discs at L4-5 and L5-S1. Dr. Jarrot then referred Patt to Dr. Watermeier on August 15, 2001.
*548 Patt first saw Dr. Watermeier on August 23, 2001. Dr. Watermeier reviewed the MRI previously done and found evidence of disc herniations at L4-5 and L5-S1 in the lower back. A nerve conduction study showed abnormalities consistent with herniations and a CT scan showed broad based herniations at L5-S1. On February 6, 2002, Dr. Watermeier felt Patt was not improving and recommended an epidural spinal block while waiting for clearance for a lumbar fusion. On March 6, 2002, Dr. Watermeier noted that Patt was still complaining of back pain, therefore, he recommended a less invasive procedure, an IDET procedure. Dr. Watermeier's notes from the April 2, 2002 visit with Patt indicate that surgery was recommended, including the IDET procedure. Patt continued to see Dr. Watermeier until November 20, 2002 and, on that date, Dr. Watermeier noted that Patt was not currently interested in epidural treatments or any type of surgical intervention. Dr. Watermeier testified that Patt's disability rating is 10-15% whole body with restrictions against lifting.
In a personal injury suit, a plaintiff must prove causation by a preponderance of the evidence. Dabog v. Deris, 625 So.2d 492 (La.1993). A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973 (La.1991), citing Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977).
In determining medical causation, plaintiffs have argued that the trial court did not give more weight to the testimonies of the treating physicians. We recognize that the diagnosis and opinion of the treating physician are entitled to more weight than those of doctors examining plaintiff for consultation for litigation purposes only. Jaeckle v. Dresser Industries, 457 So.2d 646 (La.1984). We also note that Dr. Aiken, who testified on behalf of the defendants in this case, did not actually examine the plaintiffs. His testimony was based solely on a review of plaintiffs' medical records.
Based on the testimonies and medical records introduced at trial, we find the injuries sustained by Patt and Boxie were caused by the accident in March 2000 and the treatments they received were related to that accident. We further find the trial court erred in failing to award the total medical expenses incurred by each plaintiff.
When a plaintiff alleges that they have incurred medical expenses as a result of injuries suffered in an accident and that treatment is supported by a bill, that evidence is sufficient to support an award for past medical expenses unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. Earls v. McDowell, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, citing Stiltner v. National Union Fire Insurance Company, 2000-2230 (La.App. 4 Cir. 10/3/01), 798 So.2d 1132. In the absence of bad faith, it is error for the trier of fact to fail to award the full amount of medical expenses that are proven by a preponderance of the evidence that were incurred as a result of an accident. Earls, supra, citing Simon v. Lacoste, 2005-550 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102.
We find there is sufficient evidence to support an award for the total *549 amount of both plaintiffs' past medical expenses. Plaintiffs have submitted medical bills for the treatments received and have alleged the expenses were incurred as a result of the accident in question. Their physicians have testified that the medical treatments received were for injuries sustained as a result of the accident. Defendants have not supplied sufficient evidence to indicate the bills are unrelated to the accident. Therefore, we find plaintiffs are entitled to recover their total past medical expenses. We award Boxie $37,064.03 in past medical expenses. We award Patt $39,948.19 in past medical expenses.
We also find that Boxie and Patt are not entitled to future medical expenses for surgery and follow-up treatment. Dr. Watermeier recommended surgery for both plaintiffs in April 2002. Both plaintiffs refused the surgery and the less invasive IDET procedure. As of the date of the trial, July 10, 2006, neither plaintiff had undergone any type of surgical procedure for their back injuries. Further, plaintiffs have not indicated on appeal that they have undergone any surgical procedure since the date of trial. Therefore, it appears the plaintiffs chose to conservatively treat their injuries with medication and follow-up visits with their physicians and have provided no evidence that they will seek surgical treatment in the future. Therefore, we will not award future medical expenses to these plaintiffs.
In their assignment of error number five, plaintiffs argue the trial court failed to award full and adequate general damages. In regard to the appellate review of general damage awards, the Louisiana Supreme Court noted in Theriot v. Allstate Insurance Co.:
Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion[.] . . . And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient." . . . Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions . . . Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that that award is inadequate
. . .

Williams v. Roberts, 05-852 (La.App. 5 Cir. 4/11/06), 930 So.2d 121, citing Theriot v. Allstate Insurance Co., 625 So.2d 1337 (La.1993).
Patt suffered two herniated discs in his lower back and treated with various physicians from March 2000 until May 2006. During that time, he continued to complain of pain and was given mostly medications to treat his pain. He was offered surgery, but declined to undergo the procedures to alleviate the pain. He was also given physical therapy treatments but only for approximately four weeks. Patt was treated conservatively with small amounts of physical therapy and medications for a total of seventy four months. The trial court awarded Patt $30,000.00 for pain and suffering. We recognize Patt received treatment for his injuries for a lengthy period of time, however, this was partly due to the fact that he did not undergo a surgical procedure but instead *550 continued to see his physician and conservatively treat with pain medication. We do not find a clear abuse of the trial court's discretion in its general damage award for Patt. The general damage award by the trial court is adequate, given the injuries suffered by Patt and the treatments he underwent. Therefore, we affirm the trial court's award of general damages for pain and suffering for Patt of $30,000.00.
We also affirm the trial court's award of $40,000.00 in damages for pain and suffering for Boxie. Boxie suffered two disc herniations in his back and treated with various physicians for his injuries from March 2000 until November 2005, for a total of 68 months. Just like Patt, Dr. Watermeier recommended that Boxier undergo surgery in April 2002. Boxie, like Patt, did not undergo a surgical procedure, but treated conservatively with Dr. LeBean and received medications for the pain. We do not find a clear abuse of the trial court's discretion in its general damage award for Boxie. The general damage award by the trial court is adequate, given the injuries he suffered and the treatments he underwent. Therefore, we affirm the trial court's award of $40,000.00 in general damages for pain and suffering for Boxie.
Finally, plaintiffs argue in assignment of error number eight that the trial court erred in failing to award them the entirety of their trial deposition and expert witness expenses. Following trial, the trial court's judgment, dated September 1, 2006, provided that defendants were to pay all costs of the proceedings. Thereafter, plaintiffs filed a Motion to Fix And Tax Costs seeking expert witness fees for Dr. Watermeier and Dr. LeBean and deposition costs for trial depositions of Dr. Watermeier, Dr. LeBean, Tamplain, and Rossyion. The total costs sought by plaintiffs was $4,141.40. A hearing was held on December 18, 2006 and the trial court ordered LIGA, on behalf of the defendants, to pay only one half of the costs. Defendants had argued this was appropriate because the judgment had cast the remaining defendants at fifty percent fault. We reverse the trial court's judgment regarding these costs and order that defendants pay the entire amount of costs, $4,141.40. As discussed above, we found Smith-Ruffin to be 100% at fault in the cause of this accident, with no fault attributed to Dillon. Therefore, there is no need to reduce the costs by fifty percent.
Accordingly, the judgment of the trial court is reversed in part and affirmed in part. We reverse the trial court's finding that two impacts occurred and hold the stipulation made by the parties in their Pre-Trial Order to be valid and binding. We also find Smith-Ruffin to be solely at fault in the accident, with Statewide vicariously liable as her employer, with no fault attributed to Dillon. We further amend the trial court's past medical expense award to include all medical expenses incurred. We award Boxie $37,064.03 in past medical expenses and award Patt $39,948.19 in past medical expenses.
We also reverse the trial court's judgment regarding the award of fees and costs and order defendants to pay the entire amount sought by plaintiffs, $4,141.40. Finally, we affirm the trial court's award of general damages of $40,000.00 for Boxie and $30,000.00 for Patt.
REVERSED IN PART; AFFIRMED IN PART.